**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Calvin SLATER, Jr., Defendant-Appellant.**

**No. 74–3475.**

United States Court of Appeals, Fifth Circuit.

Dec. 18, 1975.

T. M. Flournoy, Jr., Columbus, Ga. (Court appointed), for defendant-appellant.

William J. Schloth, U. S. Atty., Ronald T. Knight, H. Palmer Carr, Jr., Asst. U. S. Attys., Macon, Ga., for plaintiff-appellee.

Before BELL, THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

William Calvin Slater, Jr. appeals from his conviction for failing to comply with an order to report for induction into the armed forces. 50 U.S.C. App. § 462. He attacks the sufficiency of the evidence as to his knowledge of his duty to report and also complains of the trial court's charge. After full consideration of his arguments and careful examination of the record, we find that we must reverse.

The evidence in this case showed that appellant failed to appear for three scheduled physical examinations[1] as well as for induction on June 28, 1972. He also repeatedly failed to keep Selective Service authorities informed of his frequent address changes. Appellant argues, however, that this evidence falls short of the showing required to sustain a conviction for "willful and knowing" failure to report for induction because it does not establish that he was ever aware of the induction order mailed to his last known address and to the address of his grandmother in Georgia. Without establishing that awareness, it is argued, one may be guilty of noncooperation with Selective Service authorities, or of failure to keep Selective Service informed of one's address,[2] but not of a knowing failure to report for induction.

In *United States v. Blakely,* 491 F.2d 120 (5 Cir. 1974), we affirmed a conviction under this statute on facts very similar to these. There, as here, none of the evidence directly established that the appellant had received the induction notice in question. There, as here, the evidence did tend to show a pattern of noncompliance with the duties imposed upon appellant by the Selective Service System. The court held that:

The record reflects . . . that induction notices were sent to all of Blakely's known addresses and to his attorney. None were returned. The factual determination whether Blakely received the induction order is a jury question. It was answered adversely to defendant.

491 F.2d at 123. The primary distinction between the instant case and *Blakely*[3] is

---

1. Slater failed to appear for his first physical on September 28, 1971; he later explained that he had moved from Georgia to Ohio and had not received notice of the examination. He explained his nonappearance at a December 5, 1971, physical by stating that he had misread the letter and reported at 5:30 p. m. instead of 5:30 a. m. A third failure to appear, on April 5, 1972, was attributed to late arrival at the examining station.

2. *See* 32 C.F.R. § 1641.1(a). For examples of prosecutions under this provision, see, for example, *United States v. Blakely,* 491 F.2d 120 (5 Cir. 1974); *United States v. Read,* 443 F.2d 842 (5 Cir. 1971), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1972).

3. The *Blakely* court also relied in part on the fact that the appellant had not fulfilled his "continuing duty" to report for induction after he did become aware of the outstanding order.

that none of the several notices to report for induction sent to Blakely were returned; in this case, the single notice sent to Slater's last known address was returned unopened.[4] This distinction is not only significant; it is crucial. From nonreturn of the notices, a jury could rationally infer, in light of Blakely's past and future draft derelictions, that he had *in fact received and read* at least one of the notices in question. In Slater's case, there simply is no room for that inference. The order to report was enclosed in an envelope that appears no different than an order for a physical examination or any other Selective Service communication; it was returned unopened, with the outside of the envelope marked by postal authorities "unclaimed". Because of these facts, and because there is no other evidence whatsoever that Slater was made aware of the order at that time, it cannot be contended that he had knowledge of the specific order he has been convicted of disobeying.

■ The government concedes, as it must, this much. But it asserts that the conviction nevertheless must be affirmed because, after failing to keep the Board informed of his current address, "appellant should not now be permitted to take the position that he never received the notice of induction." As a general matter of policy, we have no quarrel with this statement.[5] But we do not sit to legislate the criminal policy of the United States, particularly if that would require us to ignore the familiar legal term "knowing" which Congress placed in the statute. It instead is our duty to interpret the language that Congress chose, in accordance with the long-recognized principles that terms in criminal statutes are to be construed in their ordinary sense, *e. g., Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *United States v. 525 Co.,* 342 F.2d 759 (5 Cir. 1965), and that, where ambiguous, such terms are to be construed in the manner most favorable to the accused. *E. g., United States v. Enmons,* 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973); *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *Rewis v. United States,* 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971); *United States v. Bridges,* 493 F.2d 918 (5 Cir. 1974).

We find untenable any interpretation of "knowing" which would permit affirmance of the conviction of Slater, who, so far as the evidence shows, neither read nor otherwise learned the contents of the specific order at issue. Such an unusually broad interpretation would be unjust for many reasons. The first is that the indictment in this case charged that Slater "willfully and knowingly did fail and neglect . . . to comply with an order of his Local Board to report for and submit to induction . . ." It did not generally charge him with draft evasion[6] or with simply failing to

---

In this case, however, Slater did attempt to join the Navy some time after being informed of the June 28, 1972 order. In any event, Slater was not subject to any "continuing duty" because he was not informed of the order until after inductions ceased in January, 1973. *United States v. Long,* 505 F.2d 512 (9 Cir. 1974).

**4.** The copy of this notice sent to the address of Slater's grandmother in Georgia also was returned unopened.

**5.** For that matter, neither did Congress, since it made failure to inform the Local Board of one's current address a separate offense. As the Tenth Circuit stated in reversing a conviction similar to this one:

The defendant's failure to receive the notice to report is shown by the Selective Service record. The fact that such nonreceipt was the result of noncompliance with the duty to keep the Board advised of his address is immaterial because *such noncompliance is another offense.* [emphasis added]
*United States v. Williams,* 421 F.2d 600, 602 (10 Cir. 1970).

**6.** It might also be noted that the conclusion that Slater was a calculating and consistent draft evader is far from incontrovertible. Slater duly registered with his local board in Columbus, Georgia, advised his board in a timely fashion when he moved from Columbus to Albany, Georgia, and timely responded to a "current information questionnaire" in April, 1971.

report for induction.. The indictment charged Slater with *knowingly* failing to comply with *an order*; and we do not see how a conviction under this indictment can be sustained when there was no evidence to prove that Slater *knew of that order.*

Secondly, there simply is no authority, so far as we have been able to find, for the broadened theory of knowledge which the government must urge. To the contrary, convictions have been reversed many times where it was not proven that the accused had knowledge of the specific order at issue. *E. g., United States v. Long,* 505 F.2d 512 (9 Cir. 1974); *United States v. Belgrave,* 484 F.2d 915 (3 Cir. 1973); *United States v. Newlon,* 460 F.2d 1268 (9 Cir. 1972); *United States v. Williams,* 421 F.2d 600 (10 Cir. 1970); *Fisher v. United States,* 413 F.2d 1034 (9 Cir. 1969). Several district courts have also held the evidence insufficient to support conviction where it was not shown that the accused was timely made aware of an induction order. *United States v. Schwartz,* 366 F.Supp. 443 (E.D.Pa.1973); *United States v. Reeves,* 325 F.Supp. 179, 188–89 (M.D.Fla.1971); *United States v. Smith,* 308 F.Supp. 1262 (S.D.N.Y.1969).

Finally, adoption of the government's theory would ultimately result in unfair (and unintended) expansion of this statute. It appears to us that this is a case in which the government simply charged the accused with the wrong crime—a crime which the evidence does not show

that he committed. It is natural for there to be an unconscious tendency to uphold a conviction like this one, where it appears that the defendant was guilty of similar offenses, for which he might have received the same sentence as was imposed. But the law that the court would have to make to sustain Slater's conviction would cloud and perhaps obliterate any practical distinction between the crimes of which Slater may in fact have been guilty and the crime for which he was charged. Such a result can only be contrary to legislative intent. Why else would the offenses be separately defined?

But more important than principles of statutory interpretation are the policies behind them. A criminal conviction not only deprives a man of his freedom; it also subjects him to the moral condemnation of society in a way that does not disappear with the conclusion of a prison term. For these reasons, a man should not be convicted unless he clearly has failed to do what the law requires—and unless he reasonably could know what the law required. Affirmance here would result in Williams Calvin Slater being confined in federal custody and forced to live with a record of felony conviction for the rest of his life as a result of noncompliance with an order that he apparently never saw. Congress did not require this, and we believe that principles of common fairness forbid it.

The judgment therefore must be reversed.

After his grandmother informed him that he had received an order to report for a physical examination in Georgia, he notified the board that he had moved to Dayton, Ohio, and sent them his current address there. Although his excuses for failing to appear for physical examinations could fairly be thought unlikely or dubious, the government produced no evidence whatsoever to negate their truth. And, perhaps most importantly, Slater attempted to join the Navy in 1973, after being informed of the induction order in question. Slater's actions may indicate that he was less than diligent and cooperative with the Selective Service; they probably would be sufficient to sustain a conviction for failing to keep the board informed of his address or for failing to report for a physical examination. But they do not clearly indicate a consistent and settled course of draft evasion.