**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Henry BRIGHT, Jr.,
Defendant-Appellant.**

No. 75–2992.

United States Court of Appeals,
Fifth Circuit.

Oct. 27, 1976.

Rehearing and Rehearing En Banc
Denied Dec. 6, 1976.

Roland E. Dahlin, II, Federal Public Defender, Mike DeGeurin, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Edward B. McDonough, Jr., U. S. Atty., Mary L. Sinderson, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

John Henry Bright, Jr. appeals from his conviction in a jury trial for bail jumping in violation of 18 U.S.C. § 3150.[1] Bright concededly failed to comply with a lawful order to surrender himself to a United States Marshal to begin serving a sentence arising from an earlier conviction. He argues, however, that the statute does not apply to a failure to surrender to a marshal, and alternatively, that he did not receive due notice of the order to surrender. Finding no merit in either of these contentions, we affirm.

I. The Factual Background.

In May, 1974, appellant was convicted in the United States District Court for the

---

1. 18 U.S.C. § 3150 provides in pertinent part: Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with the charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . . .

Southern District of Texas sitting in Laredo of conspiring to distribute marijuana. The court sentenced him to five years with a special parole term of three years, but released him pending appeal pursuant to 18 U.S.C. § 3148. On his appearance bond appellant listed as his address the Dallas address of his mother. One condition of the bond was that he would not leave the Northern or Southern Districts of Texas.

Shortly after filing the appeal, Bright replaced his two trial attorneys with John K. Coil of Dallas, Texas. The Fifth Circuit clerk designated Mr. Coil as Bright's attorney of record. However, neither Coil nor Bright informed the District Court clerk of this change.

Appellant and the Government stipulated at the trial below that Bright and his wife were primarily absent from Texas between October, 1974, and February 5, 1975. During that period the Brights traveled to at least seven states and Canada. In the course of their travels, the Brights periodically contacted attorney Coil and their respective mothers in Dallas. The Brights testified that during these telephone calls they inquired about the status of appellant's appeal. However, both the appellant and his wife consciously avoided informing anyone—the District Court clerk, the Fifth Circuit clerk, attorney Coil, appellant's mother, or his wife's mother—of their whereabouts.

A panel of this court affirmed the Laredo conviction on November 20, 1974. *United States v. Bright*, 504 F.2d 759 (5th Cir. 1974). Coil twice received notice that Bright's conviction had been affirmed, once by a letter dated November 20, 1974, from the Fifth Circuit clerk to him, and once by receipt of a carbon copy of a letter dated December 12, 1974, from the Fifth Circuit clerk to the District Court clerk. However, he did not notify the Brights, whose whereabouts he did not know. On December 19, 1974, District Judge Ben C. Connally entered an order directing Bright to surrender to the U. S. Marshal for the Southern District of Texas on December 27, 1974. The District Court clerk mailed a copy of the surrender order to Bright at the address of his mother that he had given on the bond. Since the order was sent by certified mail, return receipt requested, and since the appellant was not located at that address, the order was returned to the clerk. The clerk's office did not mail notice of the order to Coil because his address did not appear on the transmittal letter from the Fifth Circuit. Instead, copies of the order were mailed to Bright's trial attorneys, whom he had previously discharged but who were still listed as attorneys of record in the district court.

Bright failed to surrender as ordered. He was arrested by a county sheriff in Georgia on February 5, 1975, on a charge of possessing a stolen motor vehicle. Subsequently, a one-count federal indictment was returned charging him with violating the bail-jumping statute, and he was convicted after a four-day jury trial.

II. Whether Appellant's Failure to Surrender to a U. S. Marshal Constitutes Bail Jumping.

Appellant argues that a marshal is neither a "court" nor a "judicial officer." The Government argues that a District Court can designate a marshal as its agent for the surrender of a defendant, apparently conceding that a marshal is not a "judicial officer." This concession logically follows from the definition of "judicial officer" in 18 U.S.C. § 3156(a)(1) as "any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure, to bail or otherwise release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the Superior Court of the District of Columbia . . . ." Since neither section 3041 nor the Federal Rules of Criminal Procedure empower a marshal to authorize bail or otherwise to release a person, this definition forecloses an argument that a marshal is a "judicial officer." This conclusion accords with that of other courts that have considered the issue. *See United States v. Logan*, 505 F.2d 35, 37 (5th Cir. 1974); *United States v. West*, 477 F.2d 1056, 1057–58 (4th Cir. 1973); *United States*

*v. Wray*, 369 F.Supp. 118, 125 (W.D.Mo. 1973).

Obviously, appellant is literally correct in arguing that a marshal is not a "court" or "judicial officer". We must go beyond this simple argument, however, because we have held that in some circumstances a failure to surrender to a marshal is a violation of a court order to appear. *See United States v. Logan, supra.* The district court in *Logan* sentenced the defendant to five years' imprisonment on June 1, 1973. The defendant's wife and child lived in Houston, Texas, about 750 miles from El Paso, where the sentencing court was located. Upon defendant's request that he be allowed time to make arrangements for the care of his family, the court permitted him to remain on bail until June 8, 1973, at which time he was to report back to the court to begin service of his sentence. The defendant further requested that he be allowed to surrender to the U. S. Marshal in Houston. The court granted that request, ordering him to surrender to the marshal at a designated time and place. After he failed to surrender as ordered, Logan was indicted and convicted of bail jumping under section 3150. In affirming the conviction, we said:

> Admittedly, a United States Marshal is not a "court or judicial officer", as those terms are used in the above statutes; but we agree with the holding in *United States v. West*, 4 Cir., 477 F.2d 1056 (1973), that under circumstances substantially the same as those here, it is appropriate to view the Marshal as the designated agent of the Court for the purpose of taking a sentenced defendant into custody. 505 F.2d· at 37.

However, in *United States v. Clark*, 412 F.2d 885 (5th Cir. 1969), we reversed a conviction because the defendant had merely failed to appear before a probation officer for the preparation of a pre-sentencing report. In *Logan* we discussed the numerous facts that make *Clark* unique. For example, it was not clear from the record whether Clark's original obligation to appear arose from a court order or from the conditions of the bond; only violations of court orders are punishable under section 3150. Moreover, Clark did appear before the probation officer as required by the court, but he failed to appear for a later appointment he had arranged on his own with the probation officer.[2]

We think *Logan* controls the first issue in this case. There we approved this language from *United States v. West, supra* :

> The essence of the crime of bail jumping is willful failure to appear before 'any court or judicial officer as required.' As a condition of defendant's bond, the court ordered him to report to the United States Marshal at a specific time to begin serving his sentence. An unnecessary waste of judicial time and energy would result if we were to require that each person in West's position appear before the court itself. No discretionary action is involved at all. 505 F.2d at 37.

In this case, as in *Logan* and *West*, the district court had already sentenced the defendant, and thus a courtroom appearance would have been a useless waste of the court's time. It is true that the district court in *Logan* ordered surrender to a marshal at the defendant's request. ·But our

---

2. In *Clark* this court positively stated that Clark's "failure to keep an appointment with a probation officer did not therefore constitute the kind of non-appearance which § 3150 of the Bail Reform Act was designed to discourage." 412 F.2d at 891. In *Logan* we added:

> The same could not be said about the failure to obey an order of the Court to report to the U. S. Marshal to begin service of sentence. A bail bond would be meaningless if the defendant could discharge all his obligations thereunder by making the necessary appearances down to the point of entering custody to begin service of his sentence. If the trial

judge in this case had required the defendant to make the 750 mile trip from Houston to El Paso at his own expense to report to the court itself, he would have been promptly turned over to the U. S. Marshal. No confusion or havoc could possibly arise from the Court's designation of the U. S. Marshal at Houston as its agent to receive the defendant under the circumstances. 505 F.2d at 39. We perceive no conflict between *Logan* and *Clark*. Indeed, *Clark* preceded both *West* and *Logan*, whereas the court in *Logan* had the benefit of both *Clark* and *West* when it approved *West* and distinguished *Clark*.

decision there was not based on Logan's failure to meet a condition he had requested. Rather, we affirmed his conviction because he "did not report to custody *as ordered*." (Emphasis added). 505 F.2d at 36. Defendant's failure to report to custody as ordered in the instant case is the basis for his conviction, thus bringing *Logan* into play. Moreover, the Fourth Circuit's opinion in *West*, which we approved in *Logan*, affirmed a conviction on nearly the same facts we face in this case.

*Logan* has thus established in this Circuit that when a district court, after sentencing, orders a defendant to surrender to a U. S. Marshal to begin serving a sentence, the marshal acts as the court's designated agent for the limited purpose of taking the defendant into custody. Therefore appel-

lant's failure to surrender to the U. S. Marshal as ordered constituted a "failure to appear before 'any court or judicial officer as required.'"

We think that *Logan* is not only controlling, but correct. Legislative history does not suggest otherwise; at most it is ambiguous.[3] Our holding barely expands the literal reading of section 3150. Bail jumping remains a very narrow crime. Not all breaches of bond conditions give rise to criminal liability under the statute.[4] Only failures to appear as ordered constitute bail jumping, and that conduct is precisely what Congress intended to deter by making bail jumping a serious crime. The deterrent effect of the statute does not turn on whether the district court orders a defendant to surrender in a courtroom instead of

[3]. The Bail Reform Act of 1966, Public Law 89–465, 80 Stat. 216 (June 22, 1966), amended Chapter 207 of Title 18, United States Code, by replacing the former bail jumping statute (18 U.S.C. § 3146) with seven new sections numbered 3146 through 3152. *See* H.Rep.No.1541, 89th Cong., 2d Sess., 2 U.S.Code Congressional and Administrative News pp. 2293, 2295 (1966). The former bail jumping statute provided in part:

> Whoever, having been admitted to bail for appearance before any United States commissioner or court of the United States, incurs a forfeiture of the bail and willfully fails to surrender himself within thirty days following the date of such forfeiture, shall, if the bail was given in connection with a charge of felony or pending appeal or given in connection with a charge of felony or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both
> . . . .

It is clear from the Report of the Judiciary Committee to the House of Representatives that the purpose of the Bail Reform Act was to assure that all persons, regardless of their financial status shall not needlessly be detained pending their appearance to answer charges, to testify, or pending appeal, when detention serves neither the ends of justice nor the public interest. H.Rep.No.1541, 89th Cong., 2d Sess., 2 U.S.Code Congressional and Administrative News pp. 2293, 2295 (1966).
After a thorough review of the history of the Act, the court in *United States v. Wray*, 369 F.Supp. 118, 124 (W.D.Mo.1973), although ruling contrary to our holding in this case, con-

cluded that "[i]t appears that Congress apparently did not contemplate the situation herein during the drafting and passage of the [Act]." This court has previously noted, in the context of other issues, that the dearth of legislative discussion on section 3150 leads to the conclusion that Congress did not intend to change the meaning of the bail jumping statute. *See Brown v. United States*, 410 F.2d 212, 216 (5th Cir. 1969). Indeed, if anything, Congress intended to make the statute's application broader by deleting the requirement of a thirty day lapse between the failure to surrender and a criminal charge. We are unable to conclude that the 1966 change should dictate a different result where a defendant fails to surrender to a marshal after sentencing as ordered by the district court.

[4]. Appellant cites our reference to a Justice Department memo in *United States v. Clark, supra*, 412 F.2d at 888 n.3. That memo, No. 484, September 8, 1966, in referring to section 3150, states:

> The Act does not provide penalties for a violation short of failing to appear before a judicial officer or court as required. * * * For example, a person may be required to live at a specified address; however, if he lives elsewhere but appears as required before the judicial officer or court he is not subject to the penalties herein provided.

This Justice Department example merely serves to illustrate the distinction between violations of bond conditions which also constitute violations of court orders to appear and violations of bond conditions in general.

to a U. S. Marshal at a specific time and place.

Finally, *Logan* reflects a common sense approach. A different and hypertechnical approach would have either of two undesirable effects. First, if district courts wanted to impose the extra deterrent effect of section 3150, they would have to order defendants routinely to appear in the courtroom, in turn for a routine direction to surrender to a U. S. Marshal. Such a practice would result in an unnecessary additional burden on already overburdened district courts. Alternatively, if district courts wanted to avoid this waste of their time, they would simply increase the amount of bail to achieve the desired deterrent effect. This practice would be unfair to defendants who are not inclined to bail jump but who are unable to post sufficient additional security. Thus, we agree with the Fourth Circuit's distinguished panel (Sobeloff and Boreman, Senior Circuit Judges, and Winter, Circuit Judge), which held in *United States v. West, supra,* that a U. S. Marshal is the designated agent of the district court in circumstances such as those in this case.

III. Whether Bright's Failure to Surrender was "Willful."

■ We next consider Bright's contention that his conviction must be reversed

because he did not receive due notice of the order to surrender and thus cannot be said to have "willfully" failed to appear. In considering this issue, we are bound by the teachings of *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680, 704 (1942), which requires us to view the evidence in the light most favorable to the Government. *See also United States v. Box,* 530 F.2d 1258, 1263 (5th Cir. 1976); *United States v. Arias-Diaz,* 497 F.2d 165, 168 (5th Cir. 1974). We must decide whether the jury could reasonably, logically, and legally infer from the evidence presented that appellant was guilty of violating the statute beyond a reasonable doubt. *Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 137, 99 L.Ed. 150, 166 (1954).[5]

While it is admitted that Bright did not have actual knowledge of the surrender order, actual knowledge is not required. As we stated in *United States v. Cohen,* 450 F.2d 1019, 1021 (5th Cir. 1971):

A defendant's failure to appear because he purposefully engaged in a course of conduct designed to prevent him from receiving notice to appear can clearly be as "willful" as when he receives and deliberately ignores a notice to appear. *See United States v. DePugh,* 434 F.2d 548 (8th Cir. 1970) [*cert. denied,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971)];

---

**5.** Some of the opinions of this court suggest that the burden of proof requires that the Government prove the allegations of the indictment to the exclusion of every "reasonable hypothesis of innocence." *See, e. g., United States v. Box,* 530 F.2d 1258, 1263 (5th Cir. 1976); *United States v. Squella-Avendano,* 478 F.2d 433, 436 (5th Cir. 1973). In *Holland* the petitioner alleged error in the trial court's refusal to instruct the jury that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. The Supreme Court rejected that contention, saying:

There is some support for this type of instruction in the lower court decisions, [citations omitted] but the better rule is, that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect. [citations omitted].

Circumstantial evidence in this respect is intrinsically no different from testimonial evi-

dence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more. 348 U.S. at 139–40, 75 S.Ct. at 137.

In *United States v. Warner,* 441 F.2d 821 (5th Cir. 1971), Judge Wisdom observed that the various formulations of "exclusions of hypotheses" involved merely verbalistic distinctions. He concluded that federal courts were agreed that whether "the evidence be direct or circumstantial, the matter of the defendant's guilt is for the jury to decide unless the court concludes that the jury must necessarily have had a reasonable doubt." *Id.* at 825.

*United States v. Hall,* 346 F.2d 875 (2nd Cir. 1965) [*cert. denied,* 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965)].

We now consider in some detail the evidence revealed by the record.

■ In appropriate circumstances courts are generally rather lenient in granting bail pending appeal, but it should be observed that a defendant who has been found guilty by a jury and sentenced is not necessarily entitled to bail pending appeal as a matter of law. *See* 18 U.S.C. § 3148. Here the defendant was granted bail pending appeal. At that time he made serious and unconditional covenants in a bail bond he filed in the United States District Court for the Southern District of Texas. He promised to make proper appearances in the United States Court of Appeals at New Orleans and in the United States District Court for the Southern or Northern Districts of Texas, and at such other places as he might be required to appear, in accordance with any and all orders and directions relating to his appearance in the above entitled matter or as might be given or issued by the United States Court of Appeals at New Orleans or any other United States District Court to which the defendant might be removed or the cause transferred. In addition he solemnly covenanted with the court not to depart the Southern or Northern Districts of Texas or any other United States District Court to which he might be removed or the cause transferred. He promised to

abide by any judgment entered in the case and to surrender himself and to obey any order or direction in accordance with such judgment as the court imposing the same might prescribe. On his bail bond the defendant listed as his address the home of his mother in Dallas, Texas. That was the place to which any notices were to be sent in accordance with the appellant's own directions.

■ In the month of October, in violation of *every covenant* of his bond, the defendant not only departed the jurisdiction of the district court in which he was convicted, he left the state of Texas and traveled extensively through several states, including New Mexico, Arizona, California, Michigan, Florida, Alabama and Georgia.[6] In addition, he made an international trip to Canada.[7] During the course of these travels the appellant and his wife registered under assumed names at various hotels and motels and rented houses and apartments.[8] On occasions the appellant and his wife contacted her mother and his mother, but they never disclosed in any conversation their whereabouts.

At his jury trial on the marijuana charge the appellant was represented by two attorneys, one in Laredo and another in San Antonio. Subsequent to conviction he terminated the employment of his trial attorneys and employed Attorney Coil of Dallas, Texas to represent him. Mr. Coil's office was in his home, so presumably he could be

---

6. We do not intimate that violating the terms of the bond constitutes a violation of the statute here involved. However, such a violation is a fact to be considered with other pertinent facts and circumstances in determining whether the defendant's failure to appear was willful.

7. Appellant argues that his attorney told him and his wife that their travels would not violate the bond as long as they "kept in touch." However, the jury had before it the legible, four paragraph appearance bond signed by appellant, testimony that he had completed three years of college, and testimony that he told a Georgia sheriff that he had "jumped bond in Texas." Whether appellant knowingly bail jumped is a typical jury question, and on this evidence the jury was entitled to find that appellant had intentionally and knowingly violated his bond conditions.

8. On their trips north and west, appellant and his wife stayed in hotels and motels. During the last three months of their extended absence from Texas, the Brights stayed in the south. They rented an apartment in Tampa under the name of John Caddell, and they later rented a house in Tallahassee under the name of George Robert Caddell. They wound up living in Douglas County, Georgia. During their travels the Brights used as identification several Social Security cards and drivers licenses issued by various states in the names of John Robert Caddell, John Robert Caddell, Jr., Rae Parker Ray, and Carroll Wayne Morrison. The record contains no evidence that the Brights ever used their actual names during their entire absence from Texas.

best reached there. The appellant and his wife had his phone number. The records of this court reveal, and Mr. Coil testified to the fact, that he received notice from this court when the appellant's conviction was affirmed. As noted above, the clerk of this court sent Coil a copy of the appellate opinion with a letter dated November 20, 1974, advising him that judgment had been entered. In addition, Coil received a carbon copy of a letter dated December 12, 1974, from the Fifth Circuit clerk informing the District Court clerk of the affirmance of Bright's conviction. Mr. Coil apparently did not advise his client that his conviction had been affirmed, perhaps because he did not know how to locate him. Although appellant's wife testified that he called his attorney six or eight times, there is no evidence that he communicated with his counsel after Coil received notice of the Fifth Circuit opinion, nearly one month before Bright was ordered to surrender. There is some intimation that appellant and his wife expected Mrs. Bright's mother to stay in touch with Mr. Coil with respect to the appeal. Mrs. Erwin, Mrs. Bright's mother, testified that she did have the impression that she was to notify the Brights when they called her if the conviction was affirmed on appeal. However, she further testified that she never discussed the appeal with attorney Coil and that her contacts with him were minimal during the period involved, although she bought a home from him or through him in late 1974. It is appropriate to note at this point that both Mrs. Erwin and attorney Coil were the persons chosen by appellant Bright to keep him informed of the facts with respect to his duty and obligation to appear in response to any order issued by an appropriate court, yet neither he nor his wife ever disclosed their locations or phone numbers to Mrs. Erwin or Coil.

Finally, after their extensive travels, including a trip to Canada, Mr. Bright apparently came to rest in Georgia. There he rented an apartment and matriculated in a vocational school. In February, 1975, he was arrested on a stolen vehicle charge in the state of Georgia. He gave his jailor a false name, following the same pattern and practice in which he had indulged throughout his travels. Eventually he told the local sheriff that he "had jumped an appeal bond in Texas," and it was only through a call from the sheriff that federal authorities learned of Bright's whereabouts.

■ An additional important fact mitigates against the contention of appellant. After this court affirmed his marijuana conviction, the district judge ordered Bright to surrender to the marshal. In accordance with the address designated on his bail bond by appellant Bright, notice was sent to him at his mother's home.[9] Since appellant was not there and had left no forwarding address, the notice was returned to the clerk. No notice was sent to Coil by the district clerk, but as noted above, Coil had received notice of the appellate decision from the clerk of this court in both November and December, 1974.[10] Notice to Coil of the order would have been useless, as the record

---

**9.** The appellant contends that the district court improperly admitted into evidence a photostatic copy of the front of the envelope containing the notice to appellant Bright sent to his mother's home as requested by him, but which was returned to the court. There was a notation on the front of the envelope that appellant had left no forwarding address. He asserts this statement is hearsay and that the back of the envelope may have contained a different notation. We fail to see the importance of this contention because Bright was never at the place where he said he would be after he departed the jurisdiction of the court in October, sometime before his conviction was affirmed by the court in November. Furthermore, he did not even inform his own mother, whose address he had put on the bond as his own, of his whereabouts. The record amply demonstrates that he was never available to receive such notice at the place *designated by him* subsequent to his departure in October.

**10.** While we do not approve the failure of the district court clerk to send notice to Mr. Coil, we do not attach sufficient importance to that fact to reverse his conviction in this case, especially in view of the fact that privately retained counsel of his choice actually received two different notices of the affirmance of his conviction and in further view of the evasive and elusive conduct of the appellant.

indicates that Coil could not contact appellant and that appellant did not contact him or Mrs. Erwin after notice was sent to Coil.

 Considering all of the foregoing facts and circumstances and being bound by our holding in *Cohen, supra,* we conclude that the jury could reasonably, logically and legally infer that the appellant engaged in a course of conduct designed to prevent him from receiving notice to appear and that his failure to appear can be as clearly "willful" as though he actually received notice and deliberately ignored the notice to appear.[11] If such were not the law, an enterprising defendant, in spite of his solemn covenants and promises, could avoid the proscription of the statute by clever movements through this vast country and in other countries as well.

In conclusion, we hold that appellant was properly convicted of bail jumping, 18 U.S.C. § 3150. The district court in December, 1974, ordered him to surrender to a U. S. Marshal at a specific time and place. Since the appellant had been sentenced and the marshal simply had to take appellant into custody, a ministerial act, the marshal was acting as the designated agent of the court, and appellant's failure to surrender as ordered constituted a failure to surrender to the court. In addition, the jury could properly find that appellant's failure to surrender was willful, as there was sufficient evidence that he purposefully engaged in a course of conduct designed to prevent him from receiving notice.

Judgment AFFIRMED.

GOLDBERG, Circuit Judge (dissenting).

John Henry Bright, Jr. appeals his conviction for bail jumping in violation of 18 U.S.C. § 3150.[1] Bright, who had been released pending appeal of an earlier conviction, failed to comply with a lawful order to surrender himself to a United States marshal. Bright argues, however, that the statute applies only to failure to surrender to a court, not a marshal. Alternatively, Bright argues that he was not given adequate notice of the order to surrender. Finding myself in substantial agreement with both contentions, I must dissent from the majority's affirmance of Bright's conviction.

I.

18 U.S.C. § 3150 imposes a penalty upon anyone who has been released pending trial or pending appeal and who "willfully fails to appear before any court or judicial officer as required". Here Bright was ordered to appear before a marshal. He contends, quite correctly, that a marshal is neither a "court" nor a "judicial officer" under the statutory definition, and the majority agrees. The majority is content, however, to ignore the "court or judicial officer" requirement, apparently because it concludes that Congress employed words devoid of meaning in enacting the phrase. Because I do not regard second-guessing Congress as my function, particularly when the effect is to expand a criminal statute beyond its plain terms, I must dissent. I briefly sketch my analysis of the statute's terms.

First, a marshal is not a "judicial officer" within the meaning of the statute. "Judicial officer" is defined by 18 U.S.C. § 3156(a)(1) as "any person or court authorized pursuant to section 3041 of this title, or the Federal Rules of Criminal Procedure,

---

**11.** We realize that the prosecution presented only circumstantial evidence in this case to prove that the defendant had willfully failed to appear. However, as noted in footnote 5, *supra, Holland v. United States* and *United States v. Warner* dictate that we apply the same standard in reviewing a jury verdict whether it is based on direct or circumstantial evidence.

**1.** 18 U.S.C. § 3150 provides in pertinent part:
Whoever, having been released pursuant to this chapter, willfully fails to appear before

any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with [the] charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both . . . .

to bail or otherwise release a person before trial or sentencing or pending appeal in a court of the United States, and any judge of the Superior Court of the District of Columbia . . . ." A marshal is not authorized to bail or otherwise to release a person.[2] The majority concedes that a marshal is not a "judicial officer" within section 3150, and every court that has considered the issue has reached the same conclusion. *See United States v. Logan,* 505 F.2d 35, 37 (5th Cir. 1974); *United States v. West,* 477 F.2d 1056, 1057–58 (4th Cir. 1973); *United States v. Wray,* 369 F.Supp. 118, 125 (W.D. Mo.1973).[3]

The government's attempt to bring a marshal within the statutory terms therefore rests on the facially implausible notion that a marshal is a "court." As the majority acknowledges, the easy answer is that the statute's plain language dictates the contrary conclusion, especially in light of the familiar principle that criminal statutes must be strictly construed. *See, e. g., United States v. Bass,* 405 U.S. 336, 347–48, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

The majority, however, seizes upon *United States v. Logan,* 505 F.2d 35 (5th Cir. 1974), which upheld a conviction for failure to surrender to a marshal. After being ordered to surrender to the court, the defendant requested and received permission to ·travel 750 miles to Houston to make arrangements for his family. At the defendant's request, the court ordered him to surrender to the United States marshal rather than return to the court. Under those circumstances we held that the marshal was the court's agent so that section 3150 was applicable to the defendant's failure to appear.

On the other hand, in *United States v. Clark,* 412 F.2d 885 (5th Cir. 1969) we overturned defendant's conviction because he had been ordered to appear before a probation officer rather than before a court. Admittedly, other circumstances in *Clark* might have called for reversal as well. It was unclear from the record whether Clark's obligation to appear before the probation officer arose from a court order, from the conditions of his appearance bond, or from a condition imposed by the probation officer. *See* 412 F.2d at 886–87. Section 3150 proscribes only the failure to appear before "any court or judicial officer *as required,*" (emphasis added), and the proper construction of that provision may be "as required by a court order." On that view the government's failure to establish that Clark had been ordered by a court to appear before the probation officer at the time in question would have warranted reversal of the conviction.

It is clear from the *Clark* opinion, however, that that was not the basis of the

---

**2.** 18 U.S.C. § 3041 provides that a person may be released

> by any justice or judge of the United States, or by any United States magistrate, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found . . . . .

Fed.R.Crim.P. 46 does not expand the list of persons who may release a defendant before trial or pending appeal.

That the "judicial officer" definition is written in terms of authority to bail someone may be attributable to its position in the overall statutory scheme. The definition applies not only to section 3150 but also to sections 3146 through 3149, which authorize a "judicial officer" to release a person and to impose conditions of release. We cannot, however, excise section 3150 from the statutory definition. With unmistakable clarity Congress made the definition applicable to "sections 3146–3150," not merely to sections 3146 through 3149. See 18 U.S.C. § 3156(a).

**3.** The "judicial officer" definition is identical in relevant respects to its predecessor. *See* Act of June 22, 1966, Pub.L.No. 89–465, § 3(a), 80 Stat. 216 (formerly codified as 18 U.S.C. § 3152(1)). Congress enacted a new and unrelated § 3152 in 1975, reenacting the "judicial officer" definition as part of § 3156. I read no significance into the reenactment because there is no indication in the legislative history that Congress considered or was aware of existing judicial constructions of the section. If I were to accord the reenactment any significance, however, my result would be reinforced. As indicated by the cases cited in the text, at the time the definition was reenacted the unbroken judicial construction was that marshals were not "judicial officers."

decision. We never discussed the "as required" provision. Instead, we focused on the "court or judicial officer" requirement, squarely holding that the statute was inapplicable to Clark's conduct because a probation officer is not a "court or judicial officer." *See* 412 F.2d at 888–91. For example, we said that "Clark's failure to appear before a probation officer *as ordered* may have constituted a breach of a condition of his release, but certainly did not constitute a failure to appear *before a court or judicial officer.*" 412 F.2d at 891 (emphasis added). In attempting to characterize *Clark* as an "as required" decision rather than a "court or judicial officer" decision, the majority simply ignores *Clark*'s language. And the language in question was not dictum but squarely the basis for reversing Clark's conviction. The *Clark* result establishes that probation officers to whom defendants are ordered to surrender do not invariably become agents of the court so as to come within section 3150. The majority does not suggest that there is any inherent difference between a probation officer and a marshal that would allow one but not the other to be made the court's agent for this purpose, and *Clark* therefore indicates that a marshal to whom a defendant is ordered to surrender does not in all circumstances become an agent of the court. By holding that a marshal is always the court's agent, the majority in effect overrules *Clark.*

Because of the surface implausibility of holding that a marshal is a "court", and because of the requirement that criminal statutes be construed strictly, I would read *Logan* narrowly and take *Clark* at its word. I would treat a marshal as a "court" only when some unusual factor compels departure from the statute's strict requirements. In *Logan* the defendant himself requested permission to surrender to a marshal in order to avoid 750 miles of unnecessary travel. In contrast, the case at bar paral-

lels *Clark* in that there are no special circumstances to divert us from the explicit statutory provision that criminal penalties be imposed only for failure to surrender to a court.

Admittedly, *Logan* not only emphasized its unique factual setting but also contained some broad language and cited *United States v. West*, 477 F.2d 1056 (4th Cir. 1973). Despite the absence of special circumstances, *West* upheld a conviction for failure to report to a marshal. Special circumstances were present in *Logan*, however, and any discussion of the *West* situation was purely dictum.

Moreover, the majority's result not only unduly expands *Logan* by ignoring *Clark*, but the result is wrong as an original matter. The result contravenes the legislative history, cannot be justified by the majority's irrelevant policy argument, and most importantly undermines the salutary and heretofore unquestioned principle that criminal statutes must be strictly construed. I address each of these points in turn.

First, the majority decision to ignore the "court or judicial officer" requirement flies in the face of the legislative history. The statutory language stands in marked contrast to the previous bail jumping statute, which imposed a penalty upon anyone who "willfully fail[ed] to surrender himself" within thirty days of the forfeiture of his bail but did not specify the persons to whom a defendant was to be required to surrender. *See* Act of Aug. 20, 1954, ch. 772, § 1, 68 Stat. 747 (formerly codified as 18 U.S.C. § 3146).[4] Because the "court or judicial officer" language was enacted as a specific amendment to an earlier statute, I do not regard the phrase as inadvertent. So clear a change in a statute's terminology is hardly "ambiguous", the majority's opinion to the contrary notwithstanding. *See* p. 475 *ante.*[5] Specific changes in the lan-

---

4. The change occurred in 1966.

5. The change is explicated in *United States v. Clark*, 412 F.2d 885, 888 n. 3 (5th Cir. 1969) and *Brown v. United States*, 410 F.2d 212, 216 (5th Cir. 1969). The majority erroneously cites *Brown* for the proposition that Congress did

not mean to change the statute's meaning. *Brown* said only that the amended statute, like its predecessor, did not preclude forfeiture of a bond for breach of a bond condition. *Brown* had nothing to do with the "court or judicial officer" requirement; *Brown* did not mention

guage of successive statutes provide a better guide to legislative intent than such manipulable sources as floor debates and committee reports, and I can assume only that Congress meant what it said.

The majority's result also cannot be upheld on the basis of the policy argument derived from *United States v. West, supra.* The *West* court reasoned that "an unnecessary waste of judicial time and energy would result if we were to require that each person in West's position appear before the court itself." I cannot accept this view.

Initially, I am not at all certain that requiring a person to appear before the court itself is "an unnecessary waste of judicial time and energy". Courts occupy a different position in our scheme of things than do marshals. It is not unrealistic to suppose that a lay person might regard an order to surrender to a court differently than an order to surrender to a marshal. The distinction is not born of arrogance. The robe represents moral sanctions with hierarchical heights in our governmental structure. There are overt and subtle differences between a gavel and a pistol.[6] Congress might well have concluded that the seriousness of the obligation to surrender should be manifested by an order to appear in court, and that absent such a manifestation criminal penalties should not be imposed.[7] The majority fails to address this possible justification for the "court or judicial officer requirement."

More fundamentally, even if it were demonstrated that the requirement of an appearance before the court itself is an "unnecessary waste of judicial time and energy", I would not be prepared to dispense with the requirement.[8] The need to conserve judicial resources does not justify departing from the salutary principle that criminal statutes must be strictly construed. If Congress desires to impose criminal penalties for failure to surrender to a United States marshal, we should require it to use language more explicit than that of section 3150.

Indeed, the majority's construction of this particular statute is not nearly so troublesome as its general approach to interpreting criminal statutes. That a criminal statute's legislative history is deemed "ambiguous" hardly justifies departure from the statute's plain terms. The principle that criminal statutes should be continually and continuously strictly construed must remain unquestioned. The majority does not attempt to mount a frontal assault on that principle. Instead, the majority announces somewhat uneasily that its "holding barely expands the literal reading of section 3150." *See* p. 475 *ante.* One suspects that the majority's willingness "barely" to expand this criminal statute is colored by its perhaps justifiable disdain for Bright's conduct. But "bare expansions" of criminal statutes are unlikely to be so appealing in the run of cases. Today a statute is bent to allow an evil person to be jailed for reprehensible conduct; tomorrow the wounded strict construction principle may prove insufficient to prevent manifest injustice. I

---

that requirement; and *Brown* did not and could not purport to decide the issue now before the court.

**6.** I do not denigrate the important position that a marshal holds in the Justice Department's establishment and in our nation's enforcement of its laws, but a marshal is not transmuted or transmogrified into a judge by operation of law. He or she may become a surrogate judge by occasional judicial fiat but not by our filling the statutory interstices with meanings wholly alien to the lexicographer's definitions.

**7.** That surrender orders are issued by judges manifests their seriousness to some extent. Congress might well have concluded, however,

that being ordered to appear in court would have an additional effect and should be required as a prerequisite to prosecution.

**8.** Under my result, if courts desired to conserve resources by ordering defendants to surrender to marshals, they would remain free to do so. Acceptance of my position would mean only that the section 3150 sanction would not be available. Failure to comply with an order to surrender to a marshal would still subject the defendant to arrest, *see* 18 U.S.C. § 3146(c), and the contempt sanction would remain available in proper circumstances. *See* 18 U.S.C. § 401(3). *Cf. United States v. Clark, supra,* 412 F.2d at 891.

would adhere to principle, apply the statute's clear terms, and reverse Bright's conviction.

## II.

Bright's second ground for attacking his conviction is that there was insufficient evidence that his failure to appear was "willful", as the statute requires.[9] I am not as confident as the majority that Bright's nonappearance was willful, and because the grossly mismanaged district court clerk's office failed to send Bright notice of his obligation to surrender, I would reverse the conviction on this ground as well.

The majority correctly notes that although Bright did not have actual knowledge, actual knowledge is not required. See, e. g., United States v. Cohen, 450 F.2d 1019, 1021 (5th Cir. 1971). As Cohen recognized,

A defendant's failure to appear because he has purposefully engaged in a course of conduct designed to prevent him from receiving notice to appear can clearly be as "willful" as when he receives and deliberately ignores a notice to appear. See United States v. DePugh, 434 F.2d 548 (8th Cir. 1970) [cert. denied, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971)]; United States v. Hall, 346 F.2d 875 (2nd Cir. 1965) [cert. denied, 382 U.S. 910, 86 S.Ct. 250, 15 L.Ed.2d 161 (1965)].

450 F.2d at 1021. The majority approvingly cites this passage from Cohen but gives insufficient attention to the requirement that a defendant "purposefully" engage in conduct "designed to prevent him from receiving notice."

In the case at bar there is some evidence in the record that would support a holding of purposeful evasion. Bright and his wife left Texas and traveled extensively. They finally came to rest in Georgia, where they rented a house and Bright enrolled in vocational school. Bright did not provide his address to his attorney or to his Texas relatives. Bright's apparent intention to remain outside of Texas indefinitely at an undisclosed address supports an inference that he was purposely avoiding any notice of his obligation to surrender.

Consistent with these facts, however, is a reasonable hypothesis of innocence. Bright had been told by his attorney Coil that his conviction was sure to be overturned and that, at any rate, the appeal would be pending for between 1½ and 2 years. Furthermore, Coil told Bright that if the conviction were affirmed an appeal would be taken to the United States Supreme Court. Therefore, Bright might have believed that he would not become subject to an order to surrender during the period in question. Moreover, there was undisputed evidence that Bright took steps to learn of any obligation to surrender. He frequently telephoned his mother, his wife's mother and attorney Coil. Although Bright did not talk to Coil between the time the original conviction was affirmed and the time of the bail jumping arrest, Bright might reasonably have concluded that any developments in the case would come to the attention of his mother or his wife's mother. Bright provided his own mother's address on the bond; she failed to learn of the surrender order only because the notice was returned undelivered rather than being delivered to her. In addition, Bright's wife's mother was in frequent contact with Coil, from whom she had recently purchased a house, and Bright might have concluded that Coil would relate to her any developments in the case. The record is unclear whether Bright contacted either his own mother or his wife's mother between the time he was ordered to surrender and the time of his arrest. Bright's failure to disclose his Georgia address, upon which the majority places so much reliance, might have been based on the fact that leaving Texas was a violation of the bond conditions and accordingly subjected him to arrest, as he knew. See 18 U.S.C. § 3146(c). Bright's conduct might have been "designed" to prevent his arrest for violating bond conditions, not "designed" to prevent him from receiving notice to appear. While I do not condone

9. See note 1 supra.

Bright's conduct, I am not convinced it comes within the *Cohen* standard.

On these facts it is a close question whether the jury could reasonably have concluded that Bright's failure to appear was willful. Certainly, the fact that Bright violated his bond by leaving Texas is not sufficient standing alone to support a finding of willfulness. Although Bright's violation of the bond condition is to be condemned, it is not a violation of section 3150, a fact the majority acknowledges but then ignores. There is a distinction between the violation of a bond condition and failure to appear before a court. The sanctions are different and the components of the transgressions are not identical. Bright was charged with being a bail jumper, not a bond covenant breaker, and my analysis proceeds with this basic distinction in mind and in the forefront. I cannot ignore the hypothesis of innocence that Bright relocated in Georgia in reliance on his attorney's advice that his earlier conviction would be reversed, expecting to learn of any obligation to surrender through his frequent contacts with his attorney and relatives.

My fundamental disagreement with the majority, however, does not rest on whether this hypothesis of innocence could reasonably have been rejected by the jury. I find the evidence insufficient in a more important respect. I agree with the court in *United States v. DePugh*, 434 F.2d 548, 551 (8th Cir. 1970), *cert. denied*, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971), that a "reasonable interpretation of the statute would contemplate that a defendant . . be given reasonable notice as to any required court appearance." In the case at bar the government did not establish that it took reasonable steps to give Bright notice of his obligation to surrender.

Indeed, the undisputed evidence plainly established that the government failed to provide reasonable notice. At a minimum notice to the defendant's attorney is required. Here Bright's attorney Coil was not given notice of the order to surrender because Coil's address was not sufficiently accessible to accord with the district court clerk's convenience. Instead, the district court clerk's office sent notice to Bright's trial attorneys, who no longer represented Bright as the clerk should have known. Coil had written the district court clerk shortly after beginning his representation of Bright. The letter concerned the record on appeal, clearly indicated Coil was Bright's attorney, and listed Coil's address. Moreover, the Fifth Circuit transmittal letter listed Coil as Bright's attorney. In addition, when the notice to Bright was returned undelivered, a deputy clerk telephoned one of Bright's trial attorneys and was told that Bright was now represented by an attorney from Dallas. That attorney was Coil, as the clerk knew from the Fifth Circuit's transmittal letter. Armed with the knowledge that Coil was from Dallas, the clerk could easily have determined his address from a telephone book or lawyer directory. Nevertheless, she made no effort to notify Coil of the surrender order. The district court clerk's failure to notify Coil was completely inexcusable, and the majority suggests no excuse for it.

The majority, however, regards the clerk's egregious neglect as insignificant, pointing out that the Fifth Circuit clerk notified Coil that the conviction had been affirmed. I find the majority's reasoning unacceptable. A person released pending appeal must be given notice of the particular time when surrender is required. The Fifth Circuit notice did not say that Bright would be required to appear at all, and even if he should have known that a surrender order would be forthcoming, Bright could not have known when and where to surrender.[10]

10. What I have said should not be interpreted as indicating approval of Coil's conduct. Coil should have sought to determine whether a surrender order had been issued. Instead, Coil did nothing; he testified that he "assumed" that he would be notified if Bright were ordered to surrender. Coil understated his fault in this regard by conceding that he was "remiss" in allowing his preoccupation with other matters to prevent him from properly attending to his representation of Bright. Coil's misfeasance does not, however, excuse the clerk's neglect.

The notice requirement that I find to be a condition precedent to a § 3150 prosecution is not a mere formality. The Court in *United States v. DePugh, supra*, intimated that without such a requirement the statute would be unconstitutional. The proscription of failure to appear "as required" is not unconstitutionally vague, said the court, because the giving of reasonable notice makes it clear when an appearance is "required." Moreover, in *United States v. Slater*, 524 F.2d 987 (5th Cir. 1975) we read a notice requirement into a similar failure-to-appear statute on the basis of "principles of common fairness." 524 F.2d at 990. The majority makes no attempt to deal with the *Slater* decision.

Even if a notice requirement is not essential to save the statute from constitutional attack, I think it reasonable to assume that Congress intended for reasonable notice to be given. The uniform practice under section 3150 accords with that view; in *every* reported case in which the defendant did not have actual knowledge of his obligation to surrender, notice of the particular time when surrender was required was given to the defendant's attorney. The failure in the case at bar to provide reasonable notice appears to be totally unprecedented.

In addition to the arguments based upon constitutional overtones and statutory construction, there is another compelling reason to read a notice requirement into section 3150. The giving of reasonable notice will reduce the possibility of erroneous sec-

tion 3150 convictions. The statute proscribes only "willful" failures to appear, and the evidence on willfulness will be more reliable when the government has taken all reasonable steps to give notice.

The case at bar provides an illustration. If Coil had been notified of the order to appear, there would have been two possibilities. First, word of the order might have reached Bright, a possibility the majority discounts but cannot exclude on the basis of this record. Upon receiving notice Bright might have surrendered, thus averting the section 3150 prosecution, or he might not have surrendered, in which case the inference that his action was willful would be strong.[11] Second, word of the order might not have reached Bright. In that event it would be clear that Bright placed himself beyond the reach of notice; that aspect of the willfulness issue would not be left to the jury's speculation as it was in the actual case. Therefore, whether or not Bright would have received notice, the willfulness evidence would be more reliable and the risk of erroneous conviction would be substantially reduced.

The same will be true in every section 3150 prosecution where willfulness is an issue. The evidence of willfulness will be circumstantial; the possibility of erroneous conviction will be inescapable. I would not tolerate convictions based upon jury speculation when the speculation could be minimized by so simple a step as mailing notice to the defendant's attorney.[12] The majority

The statute requires notice of the order to surrender, not merely notice of the disposition of the appeal pending which defendant had been released.

11. The government argues that even if Coil had been notified, Bright would not have learned of the order until after the date upon which he was slated to appear. The record neither confirms nor contradicts this assertion. Bright did not telephone Coil during the period in question but may have telephoned his mother or his wife's mother, to whom Coil might have relayed word of any obligation to surrender. At any rate, even if Bright would have learned of the order after the appearance date, his reaction at that time—either voluntary appearance or continued refusal to surrender—would now

present the willfulness issue in a much different light.

12. The majority apparently finds my reasoning persuasive, for it finds it necessary to assert that "[n]otice to Coil of the [surrender] order would have been useless." Upon receiving notice of such an order Coil might have contacted Bright's mother or Bright's wife Jan's mother, Mrs. Erwin. The record indicates the Brights frequently contacted their mothers, and although the record does not indicate the dates of these contacts, it certainly does not exclude the possibility that they occurred after the surrender order. The burden of proof on this issue should of course rest with the government, because the notice question is part of the willfulness issue, which is an element of the government's criminal case.

speculates that Bright would not have received notice; it is confident enough to convict upon speculation rather than fact. On this record we cannot be certain notice would not have reached Bright, however, and I am unwilling to run this unnecessary risk of erroneous conviction.

In summary, Bright's conviction was fatally defective because he was ordered to surrender to a marshal rather than to a court as required by the statute, and because the government failed to give him reasonable notice of his obligation to surrender. I dissent.