**UNITED STATES of America, Appellee,**

v.

**John Jacob WELLS,
Defendant, Appellant.**

**No. 84–1864.**

United States Court of Appeals,
First Circuit.

Argued May 10, 1985.

Decided June 26, 1985.

Mark J. Kadish, Atlanta, Ga., with whom Rosalyn S. Kadish, Kadish & Kadish, P.C., Atlanta, Ga., Harrison T. Slaughter, Jr. and Harrison T. Slaughter, Jr., P.A., Orlando, Fla., were on brief for defendant, appellant.

F.M. Terison, Portland, Me., with whom Richard S. Cohen, U.S. Atty., William H. Browder, Asst. U.S. Atty., and Margaret D. McGaughey, Asst. U.S. Atty., Portland, Me., were on brief for appellee.

Before BOWNES, Circuit Judge, VAN DUSEN,* Senior Circuit Judge, and BREYER, Circuit Judge.

VAN DUSEN, Senior Circuit Judge.

Defendant, John Jacob Wells, was indicted for violating the federal bail-jumping statute, 18 U.S.C. § 3150 (1982).[1] The in-

---

* Of the Third Circuit, sitting by designation.

1. Defendant was indicted on November 21, 1983, at which time 18 U.S.C. § 3150 (1982) served as the federal bail-jumping statute. Section 3150 is no longer in force. It has been

dictment resulted from defendants' failure to appear at the Federal Correctional Institution in Sandstone, Minnesota (FCI–Sandstone), to begin serving a five-year prison sentence. Following a jury trial in the United States District Court for the District of Maine, defendant was convicted of the bail-jumping offense and was given a three-year prison sentence to run consecutively to his existing five-year sentence.

Defendant filed a timely appeal to this court, contending that the evidence adduced against him at trial failed to establish a violation of section 3150. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1982). We will affirm for the reasons stated in this opinion.

## I. Factual History

On July 16, 1981, defendant Wells was sentenced to five years' imprisonment following his conviction for conspiracy to possess and distribute marijuana. At the sentencing proceeding, defendant sought permission from the district court to surrender voluntarily or "self-report" to the institution at which he was to serve his sentence. The district court granted the request and ordered defendant to report for service of his sentence at the institution designated by the Bureau of Prisons within thirty days of the date of sentencing or, if defendant appealed his conviction, within thirty days of the date of affirmance by the Court of Appeals for the First Circuit. Tr. at 12. Defendant then executed an appearance bond that day after the district court set bail pending appeal. The bond provided that defendant appear "at such ... places as a defendant may be required to appear in accordance with any and all other directions relating to the defendant's appearance in the above-entitled matter as may be given or issued by the magistrate or the United States District Court for the District of Maine." Tr. at 14.

replaced by a new bail-jumping statute, included in the Bail Reform Act of 1984, to be codified at 18 U.S.C. § 3146. See Bail Reform Act of 1984, Pub.L. No. 98–473, Title II, § 203(a), 98 Stat. 1976 (1984).

Defendant's conviction for conspiracy to possess and distribute marijuana was affirmed by a judgment of this court filed on January 25, 1983. *See United States v. Hensel,* 699 F.2d 18 (1st Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983). This court's mandate of affirmance was issued on March 28, 1983. Following the affirmance, the Bureau of Prisons determined that defendant should serve his sentence at FCI–Sandstone. The Bureau set April 22, 1983, as the date for defendant to report to that institution, which date was twenty-five days after the mandate issued. On April 15, 1983, the United States Marshals Service in Savannah, Georgia, notified defendant of his obligation to surrender at FCI–Sandstone at noon on April 22. In addition, the United States Marshals Service in Portland, Maine, sent a letter to defendant's trial attorney informing him of the time and place for defendant to report.

Defendant did not report to FCI–Sandstone on April 22 or at any time thereafter. The toll records for defendant's telephone in Cobbtown, Georgia, indicate that at 9:55 a.m. on April 22, 1983, a collect call was billed to that number from the Atlanta, Georgia, airport. Later that day, at 11:51 p.m., another collect call was charged to defendant's telephone number from the Minneapolis, Minnesota, airport—an airport near FCI–Sandstone.

A warrant for the arrest of defendant on bail-jumping charges was then issued. On November 21, 1983, Wells was indicted for willfully failing to appear as required at FCI–Sandstone in violation of 18 U.S.C. § 3150. Defendant was apprehended on January 9, 1984, in New Smyrna Beach, Florida. At the time of his arrest, he was carrying documents that identified him by the name of Claude Cantrell. He also drove a motor vehicle registered in the name of Claude Cantrell. Following a jury trial in the United States District Court for the District of Maine, defendant was convicted of violating section 3150 and was sentenced to three years' imprisonment.

## II. *"Court or Judicial Officer" under 18 U.S.C. § 3150*

Defendant Wells was convicted of violating 18 U.S.C. § 3150, which reads in relevant part:

"§ 3150. Penalties for failure to appear

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, . . . . "

18 U.S.C. § 3150 (1982) (repealed 1984, current version to be codified at 18 U.S.C. § 3146).

The indictment alleged that defendant failed to appear as required at the Federal Correctional Institution at Sandstone, Minnesota. Defendant contends that FCI–Sandstone does not fit within the meaning of the phrase "court or judicial officer" in section 3150 and that, therefore, the district court erred in instructing the jury that failure to report to a United States prison falls within the purview of the statute.[2]

---

**2.** The relevant portion of the district court's instruction to the jury reads:

"Now, the defendant is charged with violating a section 3150 of Title 18 of the United States Code which provides in part, 'Whoever being released on bail willfully fails to appear before any court or judicial officer as required shall be guilty of an offense against the United States.' There are three essential elements which must be proved beyond a reasonable doubt in order to establish the offense prescribed by the law. First, that the defendant has been admitted to bail pursuant to an order given by a judge or magistrate of the court as charged; second, that the defendant thereafter failed to appear at the Federal Correctional Institution at Sandstone, Minnesota as required; and third, that the defendant did knowingly and willfully.

"Now, I instruct you that failure to report to a United States prison fails [sic] with [sic] the preview [sic] of the statute. That is, it is a

In support of his contention, defendant relies principally on the Fifth Circuit's decision in *United States v. Clark*, 412 F.2d 885 (5th Cir.1969). The facts of that case are as follows. Clark was adjudged guilty in the district court following his entry of a guilty plea. The district court then ordered Clark released on his own recognizance while he awaited sentencing. Clark signed an appearance bond, which conditioned his release on not departing from a particular geographical area. The trial judge advised Clark of the potential penalties he might incur for violating the conditions of his bond. The court then apparently issued a directive that Clark report to a probation officer, who was preparing Clark's presentence report. The precise requirements of the court's directive (i.e., how often to report to the probation officer) and the consequences for failure to follow the directive, are uncertain. Nevertheless, Clark did report to the probation officer as ordered, but the officer gave him permission to leave about 45 minutes later upon the condition that he return the next morning at 8:00 a.m. Clark failed to report the next morning and, as a result, was convicted for bail-jumping under section 3150.

On appeal, the Fifth Circuit reversed Clark's conviction, holding that a probation officer is not a "court or judicial officer" within the meaning of section 3150. The court focused its analysis on the statutory language which defined "judicial officer" as "any person or court authorized ... to bail or otherwise release a person before trial or sentencing or pending appeal...." 412 F.2d at 889.[3] The court determined that probation officers do not have the power to set bail and conditions for release and that, therefore, they are not "judicial officers." 412 F.2d 889. This interpretation of the phrase "judicial officer" is correct. *See United States v. Capen*, 571 F.2d 374, 375–76 (7th Cir.1978). Neverthe-

less, the court's holding in *Clark* is not dispositive in the case at hand.

There is a substantial line of authority to support the proposition that a person's failure to report at a designated place and time to begin serving a prison sentence constitutes a violation of 18 U.S.C. § 3150. The first such decision was *United States v. West*, 477 F.2d 1056 (4th Cir.1973) (*per curiam*), in which the court affirmed the defendant's conviction under section 3150 for failure to report to a United States Marshal at a specified place and time to begin his prison sentence. The court reasoned that the marshal was a designated agent of the court for the limited purpose of taking the defendant into custody to begin serving his sentence. *Id.* at 1058. Although the marshal was not a "court or judicial officer" *per se*, the court ruled that failure to report to the marshal to begin serving a sentence should be treated the same under section 3150 as failure to report to the court to begin serving a sentence. The court believed that an unnecessary waste of judicial time and energy would result if every sentenced defendant were required to appear in a court to begin serving his sentence merely for the purpose of satisfying the literal requirements of section 3150. *Id.*

Subsequently, the Fifth Circuit—the court which had decided *Clark*—followed the holding in *West* with its decision in *United States v. Logan*, 505 F.2d 35 (5th Cir.1974). The court in *Logan* distinguished *Clark* on several factual grounds. First, it was uncertain whether the requirement that Clark report to a probation officer was made by a court, whereas the order directing Logan to report to a United States Marshal was issued by a court. *Id.* at 38–39. Secondly, the probation officer to whom Clark was ordered to report was implicitly granted some discretion by the district court to order Clark to make fur-

---

failure to appear before a court or judicial officer within the meaning of those terms as used in the statute from which I just quoted." Tr. at 82–83.

**3.** The *Clark* court was analyzing the language of 18 U.S.C. § 3152, which defined "judicial offi-

cer" for the purposes of the Bail Reform Act. This statutory definition remains in effect, though it is currently codified at 18 U.S.C. § 3156(b)(1) (1982).

ther appearances. This discretionary power to require appearances had not been granted to probation officers under the Bail Reform Act of 1966. By contrast, the court gave the marshal no discretionary authority over Logan. The marshal's task was simply to take Logan into custody at a specified time and place and deliver him to the prison at which he was to serve his sentence. *Id.* at 39. Thus, the marshal could be considered a limited agent of the court for purposes of section 3150. *Id.* at 37. As such, the marshal did not exercise any authority in contravention of the purposes of that section or of the Bail Reform Act as a whole.

Other courts of appeals' decisions have followed the reasoning of *West* and *Logan,* while distinguishing *Clark* on its facts. In *United States v. Bright,* 541 F.2d 471 (5th Cir.1976), *cert. denied,* 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780 (1977), the Fifth Circuit affirmed the conviction under section 3150 of a sentenced defendant who failed to report to a United States Marshal as ordered by the district court following affirmance of the defendant's conviction on a narcotics offense. *Id.* at 472. The court in *Bright* concluded that its earlier *Logan* decision was more applicable than the *Clark* decision because, as in *Logan,* the defendant had already been sentenced when ordered to report, thereby rendering another appearance by him in the courtroom a useless waste of the court's time. *Id.* at 474. Moreover, in *Bright,* as in *Logan,* the defendant had failed to obey an order made by the court, as opposed to an order made by some other officer. *Id.* at 475. The court therefore reaffirmed its holding in *Logan* that when a district court orders a defendant to surrender to a United States Marshal to begin serving his sentence, "the marshal acts as the court's designated agent for the limited purpose of taking the defendant into custody." *Id.* The court reiterated its holding that a defendant's failure to report to a marshal in such circumstances constitutes a failure to appear before a "court or judicial officer" as required, in violation of 18 U.S.C. § 3150. The court in *Bright* emphasized

that the deterrent effect of section 3150 does not turn on whether the district court orders a sentenced defendant to surrender in a courtroom, rather than to a marshal at a designated time and place. *Id.* at 475–76.

Two other courts of appeals have agreed that a person's failure to obey a court order to report to a United States Marshal at a designated time and place for the purpose of being delivered to prison to serve a sentence is a violation of section 3150. In *United States v. Harris,* 544 F.2d 947 (8th Cir.1976), the Eighth Circuit rejected the earlier decision of one of its district courts, *United States v. Wray,* 369 F.Supp. 118 (W.D.Mo.1973), and chose to follow the reasoning set forth in *West, Logan,* and *Bright.* Similarly, in *United States v. Burleson,* 638 F.2d 237 (10th Cir.1981), the Tenth Circuit upheld defendant's conviction for violating section 3150 for her refusal to report to a marshal at a designated time and place to re-enter prison following the revocation of her parole.

The facts of the case at hand are closely analogous to those present in *West, Logan, Bright, Harris,* and *Burleson.* The primary difference is that, in this case, the defendant was ordered to report directly to the prison at which he would serve his sentence rather than to a marshal who would then take him to the prison. Nevertheless, we conclude that a prison can just as easily be considered an agent of the court for the purpose of taking custody of a sentenced defendant as is a United States Marshal. It is of little significance that a defendant on bail is ordered to report directly to the prison at which he will serve his sentence, as opposed to his being ordered to report to a marshal who will then take him to that same prison. Failure to comply with either order was well within the intended proscription of section 3150 of the Bail Reform Act of 1966.

The most recent bail reform amendments and their accompanying legislative history support our conclusion. The Bail Reform Act of 1984 provides for a newly worded bail-jumping statute which specifically states that a knowing failure to surrender

for service of sentence pursuant to a court order is an offense.[4] Moreover, the legislative history of this new Act states that the Act "basically continues the current law offense of bail jumping." S.Rep. No. 225, 98th Cong., 1st Sess. 30, 31, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3213, 3214. Although the Senate Report explicitly endorsed the holding in *United States v. Clark* that a probation officer is not a "court or judicial officer" under the bail-jumping statute, the report also implicitly endorsed the *West* line of decisions, which hold that failure to report for service of a prison sentence is bail jumping. The Report states:

"The holding in *United States v. Clark* [412 F.2d 885 (5th Cir.1969)] that a probation officer is not a judicial officer ... is specially endorsed, and section 3146 should be interpreted to reach the same results. Bail jumping is an offense intended to apply to actual court appearances before judges or magistrates and not to other court personnel, with the sole exception of a failure to surrender for service of sentence, as covered in subsection (a)(2). In this situation the Committee believes that the failure to appear is tantamount to a failure to appear before a court and is equally deserving of punishment."

S.Rep. No. 225, 98th Cong., 1st Sess. 32–33, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3215–3216. In summary, the language of the new bail-jumping statute squarely prohibits the activity for which defendant was convicted and the legislative history gives no indication that the new statute represents a change from the old bail-jumping statute under which defendant was convicted.

■ We conclude, therefore, that a failure to comply with a court order to report to a prison for serving a sentence constitutes a failure "to appear before any court or judicial officer" within the meaning of 18 U.S.C. § 3150. Accordingly, we hold that, as a matter of law, the district court did not err in instructing the jury that defendant's failure to report to FCI–Sandstone falls within the purview of section 3150.

### III. *"As Required" under 18 U.S.C. § 3150*

Defendant next contends that he was improperly convicted under section 3150 because there was no evidence that his failure to appear at FCI–Sandstone constituted a violation of a court order. Only violations of court orders are punishable under section 3150. *United States v. Bright*, 541 F.2d at 474. Defendant maintains that, because the date, time, and place of his required appearance at a prison was specified by the Bureau of Prisons and not by the district court, the requirement that he appear at FCI–Sandstone was not a court order. He further contends that the Bureau of Prisons is not authorized under the Bail Reform Act to set the requirements of bail, and thus his failure to satisfy the Bureau's requirement that he report to FCI–Sandstone did not constitute bail jumping under the Act.

Although the district court directed the Bureau of Prisons to select the specific prison, as well as the specific date—within a thirty-day period—at which defendant was to surrender himself, the court reserved for itself all the significant discretionary bail decisions. It was the court that considered all the relevant statutory factors [5] in determining whether to grant bail to the defendant. Moreover, the court determined the amount of bail, as well as the terms and conditions of defendant's release. Finally, the court set a relatively

---

**4.** Bail Reform Act of 1984, Pub.L. No. 98–473, Title II, § 203(a), 98 Stat. 1976 (1984) (to be codified at 18 U.S.C. § 3146).

**5.** Some of the factors that were to be considered by the district court in setting the conditions of defendant's release included: his family ties, employment, financial resources, character and mental condition, length of residence in the community, record of convictions and previous court appearances, the risk of his flight or danger, and the likelihood of his success on appeal. *See* 18 U.S.C. §§ 3146(b), 3148 (1982) (repealed 1984) (current version to be codified at 18 U.S.C. § 3143).

specific time period during which defendant was to report for service of sentence. The court's order stated:

> "The court directs that defendant report to the institution designated by the Bureau of Prisons no later than 30 days from this date or on affirmance from the U.S. Court of Appeals." [6]

Defendant claims that the court's requirement that defendant report within thirty days of affirmance was vague and that the court's order granted too much discretion to the Bureau of Prisons. Defendant maintains that, because the meaning of the term "affirmance" in the order was unclear, the district court erred in instructing the jury at his bail-jumping trial that the date of affirmance was March 28, 1983—the date that this court issued its mandate affirming defendant's conviction for narcotics offenses. [7]

 We find no error in the district court's instruction that the date of affirmance in the court's order referred to the date that the mandate was issued by this court. Once defendant appealed his narcotics conviction, the district court lost its jurisdiction over the case and did not regain jurisdiction until this court issued its mandate of affirmance, notwithstanding the fact that a judgment of affirmance had been filed at an earlier date. *See United States v. Rush,* 738 F.2d 497, 509 (1st Cir. 1984); *United States v. Ross,* 654 F.2d 612, 616 (9th Cir.1981), *cert. denied,* 454 U.S. 1090, 102 S.Ct. 654, 70 L.Ed.2d 628 (1981), 455 U.S. 926, 102 S.Ct. 1290, 71 L.Ed.2d 470 (1982); *see also United States v. Harris,* 544 F.2d at 949 n. 3 (standing court order directs defendant to report for service of sentence ten days from the date of the

mandate of affirmance by the court of appeals).

 Moreover, that the district court's order permitted the Bureau of Prisons to select a specific date for defendant to report within thirty days from the date of affirmance is not a significant delegation of authority to the Bureau. Rather, the flexibility was reasonably necessary to provide the Bureau time to find space in one of its prisons for the defendant and to set a date at which it was convenient for the prison to receive the defendant. Therefore, the date on which defendant was to report was sufficiently specific, such that it was determined by an order of the district court and not by an exercise of excessive discretion by the Bureau of Prisons. It is of little significance that the date was communicated to defendant by the United States Marshal's office, rather than by the court directly.

 Finally, that the court's directive requiring the defendant to report for service of sentence called for the Bureau of Prisons to designate the particular prison at which defendant should report did not alter the nature of that directive as a court order. The district court did not specify a particular prison because it did not have the authority to do so. *See Ange v. Paderick,* 521 F.2d 1066, 1068 (4th Cir.1975). The Attorney General of the United States is the federal official statutorily empowered to designate the place of confinement under a federal sentence. 18 U.S.C. § 4082 (1982). That authority has been delegated, by regulation, to the Bureau of Prisons. 28 C.F.R. § 0.96 (1984).

In this case, the defendant had requested the privilege of self-surrendering directly

---

6. *United States v. Wells,* No. 80–00030–09P (D.Me. July 16, 1981) (judgment and commitment order). The written order cited above is substantially the same as the oral order rendered to the defendant by the district court. The oral order stated:

> "The Court further directs that each defendant may self-report to the institution as designated by the Bureau of Prisons no later than 30 days of this date on or before the affirmance of the First Circuit Court of the convic-

tion and sentence by this Court of that defendant."

Tr. at 11–12.

7. The date that defendant was ordered to appear at FCI–Sandstone, April 22, 1983, was more than thirty days after the date this court filed its judgment of affirmance (January 25, 1983), yet was within thirty days of the date this court issued its mandate of affirmance (March 28, 1983).

to the prison in which he would serve his sentence for his conviction on narcotics offenses. The court graciously granted defendant's request. Yet, as a result, in its order that defendant report for service of sentence upon the affirmance of his conviction, the court could not specify the prison at which defendant was to report because it had no authority to do so. Had the court not granted defendant's request to self-surrender, the court could have specified the particular United States Marshal's office at which defendant was to report. Thus, it seems anomalous that defendant would now use the lack of a specific reporting place in the court's order as the basis for an appeal of his bail-jumping conviction when such lack of specificity resulted from the grant of defendant's request to self-surrender.

In summary, there was no improper delegation of authority to the Bureau of Prisons in the court's directive and thus that directive is properly characterized as a court order, the violation of which subjects a person to criminal liability under section 3150.

## IV. *"Willfulness" Under Section 3150*

Defendant contends that, as a matter of law, the Government's evidence presented at trial was insufficient to prove that his failure to surrender at FCI–Sandstone was "willful" and, therefore, proscribed by section 3150.

Willfulness is an essential element of a violation under section 3150. *United States v. Ott,* 741 F.2d 226, 228 (8th Cir.1984); *United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980). Willfulness means "committed voluntarily and with the purpose of violating the law, and not by mistake, accident or in good faith." *United States v. Bourassa,* 411 F.2d 69, 74 (10th Cir.), *cert. denied,* 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969). Willfulness means having the specific intent to do something the law forbids; a general intent to commit the proscribed act is not enough.

*United States v. Wilson,* 631 F.2d at 119. Being a state of mind, willfulness can rarely be proved by direct evidence. Rather, findings of willfulness usually require that fact finders reasonably draw inferences from the available facts. *Id.; see United States v. Wetzel,* 514 F.2d 175, 177 (8th Cir.), *cert. denied,* 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *United States v. Dorman,* 496 F.2d 438, 440 (4th Cir.1974).

In deciding whether there was sufficient evidence for the jury's finding beyond a reasonable doubt that defendant's failure to appear was "willful," this court must consider the evidence as a whole, taken in the light most favorable to the Government, together with all legitimate inferences to be drawn therefrom. *United States v. Hensel,* 699 F.2d 18, 33 (1st Cir.1983) (quoting *United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981)). The Government maintains that the evidence at trial clearly was sufficient to give rise to a reasonable inference that defendant possessed a "specific intent to do something the law forbids," *i.e.,* violating the terms of his bail. The evidence showed that defendant received notice of the time and place of his sentence, that two long-distance phone calls were charged to his phone from Minneapolis and Atlanta on the day he was ordered to report to FCI–Sandstone, and that he was subsequently arrested while living under an assumed name in Florida. Based on this evidence, the Government argues, the jury could reasonably and permissibly have inferred that defendant had flown to Minneapolis on his way to FCI–Sandstone but had second thoughts and decided not to report at the last minute.

In support of his contention that his failure to appear was not proven to be willful, defendant cites three decisions in which a defendant indicted under § 3150 was found not to have acted willfully and therefore was not subject to criminal penalty.[8] In those cases, the Government's evidence proved only that the defendants were given notice of an obligation to appear, yet

---

**8.** *See United States v. Wilson,* 631 F.2d 118, 119 (9th Cir.1980) (Government's evidence, consisting of four documents establishing only that

defendant was sent notice of order to appeal and failed to appear, held insufficient to support finding of willfulness); *United States v. James,*

they failed to appear as required.[9] Nevertheless, courts generally have held jury findings of willfulness to be reasonable in cases such as this one in which the Government has presented evidence beyond mere nonappearance and notice of an obligation to appear. Courts have found willfulness where a defendant purposely engaged in a course of conduct—usually concealment of whereabouts—designed to prevent receiving notice of an order to appear.[10] Willfulness has also been found where the defendant received notice of an order to appear yet became a "fugitive from justice" and attempted to avoid recapture by failing to disclose his whereabouts,[11] using an assumed name,[12] or traveling beyond the jurisdictional limit set by the release bond.[13] Many of these factual circumstances are also present in the case at hand. Notice of

the affirmance of defendant's conviction and of the order directing defendant to surrender was sent to defendant's counsel. Tr. at 29. In addition, defendant admits having been personally contacted by the United States Marshal's office concerning the order that he surrender. Tr. at 17. Despite his actual knowledge of that order, defendant traveled to Florida, where he was subsequently arrested while living under an assumed name. Tr. at 20. In light of these facts, we conclude, as a matter of law, that it was well within the province of the jury to find that defendant "willfully" failed to appear at FCI–Sandstone as required.

## V. *Sufficiency of the Indictment*

Finally, defendant alleges that the indictment filed against him fails to state a crime

440 F.Supp. 1137, 1139 (D.Md.1977) (trial record which did not indicate why defendant had failed to appear but which showed only that he was notified of the trial date and failed to appear thereon, insufficient to prove willfulness under section 3150); *United States v. Reed,* 354 F.Supp. 18, 20 (W.D.Mo.1973) (defendant's failure to appear because of detention in a California state prison insufficient to establish "willfulness" in failing to appear).

9. Willfulness "cannot be found beyond a reasonable doubt merely from nonappearance and notice of obligation to appear." *United States v. Wilson,* 631 F.2d at 119. *Cf. United States v. Middleton,* 690 F.2d 820, 827 (11th Cir.1982) (where defendant was present at arraignment at which magistrate announced trial date, and where defendant nevertheless failed to appear for trial, jury permissibly could find "willful" failure to appear beyond a reasonable doubt), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983).

10. *See United States v. Yates,* 698 F.2d 828, 830 (6th Cir.) (defendant failed to advise either his attorney or the court as to his whereabouts and, therefore, could not be given notice of the date on which he was required to appear), *cert. denied,* 460 U.S. 1073, 103 S.Ct. 1532, 75 L.Ed.2d 952 (1983); *United States v. Clemons,* 676 F.2d 124, 126 (5th Cir.1982) (defendant failed to keep attorney advised of his whereabouts); *United States v. Bright,* 541 F.2d at 478 (defendant avoided receipt of notice to appear by not contacting the two people designated to keep him informed of any obligation to appear); *Gant v. United States,* 506 F.2d 518, 519 (8th Cir.1974) (defendant failed to advise either his attorney or

the court as to his whereabouts, thereby avoiding receipt of notice of trial date), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975); *United States v. DePugh,* 434 F.2d 548, 551–52 (8th Cir.1970) (defendant failed to advise either his attorney or the court as to his whereabouts and, therefore, could not be given notice of that date on which he was required to appear), *cert. denied,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971).

11. *United States v. Ott,* 741 F.2d at 228 (willfulness established where defendant could not be located and did not attempt to apprise the court of her whereabouts despite receiving actual notice of the date scheduled for her arraignment); *United States v. Phillips,* 625 F.2d 543, 545 (5th Cir.1980) (after being notified of hearing date, defendant changed his address without notifying the court); *United States v. Wetzel,* 514 F.2d at 176–77 (defendant had actual notice of order to appear, and failed to keep authorities advised as to his whereabouts); *United States v. Dorman,* 496 F.2d at 440 (defendant knew of the date set for trial and failed to advise the court of his change of address).

12. *United States v. Willis,* 647 F.2d 54, 60 (9th Cir.1981) (despite knowledge that trial would be continued to the next day, defendant became a fugitive and tried to avoid recapture by assuming a false name).

13. *United States v. Guerrero,* 517 F.2d 528, 530 (10th Cir.1975) (defendant traveled beyond the jurisdiction fixed by the conditions of her bond); *United States v. Dorman,* 496 F.2d at 440 (defendant apprehended outside the geographical limit of his bond).

and, therefore, his conviction must be reversed. He contends that the indictment is not sufficiently specific to charge either the offense of criminal contempt or the offense of bail jumping.

In this case, the district court did not instruct the jury on criminal contempt, and the defendant was not convicted of that crime. Thus, defendant's contention that his indictment did not charge the offense of criminal contempt is irrelevant.

 Defendant contends that the indictment fails to state a crime for bail jumping because it merely charges defendant with failure to report to FCI–Sandstone, rather than to a "court or judicial officer" as specified in section 3150.[14] As we have already concluded previously, FCI–Sandstone is a "court or judicial officer" under section 3150 within the context of this case. Therefore, the language in the indictment that alleges defendant's failure to report to FCI–Sandstone adequately charges defendant with failure to appear before a court or judicial officer. Viewed in its entirety, an indictment is sufficient if it describes all of the elements of the charged offense using the words of the relevant criminal statute. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); *United States v. Pringle*, 751 F.2d 419, 428 (1st Cir.1984); *United States v. Holmes*, 632 F.2d 167, 169 (1st Cir.1980). The indictment in this case is sufficient because it does include all of the elements of an offense under section 3150, tracking the language of the statute and merely substituting the reference to FCI–Sandstone for the phrase "court or judicial officer." As such, the indictment properly states the crime for which defendant was convicted.

## VI. *Summary*

In summary, the Federal Correctional Institution at Sandstone, Minnesota, constitutes a "court or judicial officer" under 18 U.S.C. § 3150 within the context of this case. The directive requiring defendant to report—within thirty days from the affirmance of his conviction—to the prison designated by the Bureau of Prisons was a court order, the violation of which was punishable under section 3150. The evidence adduced at trial was more than sufficient to demonstrate that defendant willfully failed to report as ordered. Finally, the indictment filed against defendant was legally sufficient to charge the crime of bail jumping under section 3150. Accordingly, the judgment of the district court will be affirmed.

"In violation of Title 18, United States Code, § 3150."
*United States v. Wells*, No. 83–00067–P (D.Me. Nov. 21, 1983) (indictment).

---

**14.** The indictment reads in relevant part:
 "On or about April 22, 1983 and continuing up to and including the date of the filing of this indictment, in the District of Maine and elsewhere, the defendant ... wilfully did fail to appear as required at the Federal Correctional Institution in Sandstone, Minnesota;