**UNITED STATES of America, Plaintiff,**

v.

**ROYAL CARIBBEAN CRUISES, LTD., Henry Ericksen and Svenn Rikard Roeymo, Defendants.**

**Criminal No. 96–0333(PG).**

United States District Court,
D. Puerto Rico.

Sept. 19, 1997.

Jorge E. Vega–Pacheco, Asst. U.S. Attorney, Hato Rey, PR, for Plaintiff.

Judson M. Starr, Washington, DC, Joaquin Monserrate–Penagaric, San Juan, PR, Joseph G. Block, Washington, DC, Jeffrey B. Crockett, Aragon, Burlington, Weil & Crockett, Miami, FL, Jose R. Aguayo, Hato Rey, PR, for Defendant.

**OPINION AND ORDER**

PEREZ–GIMENEZ, District Judge.

This matter is before the court on six motions to dismiss one or more of the ten counts of the indictment against defendants Royal Caribbean Cruises, Ltd. (hereinafter RCCL), Henry Ericksen and Svenn Rikard Roeymo. Defendant RCCL moves for the dismissal of counts one through six for lack of jurisdiction pursuant to Rule 12(b)(1), Federal Rules of Criminal Procedure. (Docket No. 42.) RCCL further moves for the dismissal of count two of the indictment as a violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. (Docket No. 49.) In three separate motions, RCCL seeks the dismissal of counts three (Docket No. 43), counts four through six (Docket No. 44), and count ten (Docket No. 46) for failures to allege an offense. RCCL seeks the dismissal of counts five and six based upon the "exculpatory no" exception to the false statements statute. (Docket No. 48.) RCCL further moves the court to compel the government to elect between the prosecution of either count eight or count nine of the indictment on the grounds that these counts are duplicitous. (Docket No. 47.) Finally, defendant RCCL seeks vindication of its Fourth Amendment rights under Rule 12(b)(3), Federal Rules of Criminal Procedure, in the form of exclusion of evidence allegedly obtained through illegal searches and seizures. (Docket No. 45.) The court must also consider two motions by defendant Ericksen: one for leave to appear specially to move to dismiss counts six through eight (Docket No. 59) and one to join defendant RCCL's motion to dismiss counts one through six for lack of jurisdiction. (Docket Nos. and 42.) Co-defendant Ericksen also moves for leave to file a reply memorandum. (Docket No. 71.) *See* Local Rules 311(7), 406(1). The request is denied. Fed .R.Crim.P. 43(a).

▮ Motions in criminal actions shall be filed within 15 days following arraignment. *See* Local Rule 406(2). There are three exceptions to this mandate in the local rule, one of which might arguably apply in this case. The court, for good cause shown, may vary the terms of the filing of the motions. Good

cause has not been shown by the attorneys attempting to represent Henry Ericksen. The argument tendered to the court by counsel is one of convenience, lacking not only substance but merit. An arrest warrant is outstanding for Henry Ericksen. Such a warrant is the vehicle with which criminal defendants not willing to present themselves physically in court are brought to court. Counsel cannot require the court to perform futile acts, such as to rule upon matters which are academic and which depend completely upon the volition of a wilfully absent defendant. I need not add another hue unto the rainbow. William Shakespeare, *King John* act 4, sc. 2. Henry Ericksen, defendant, will have his motions considered after he is arraigned. The motion to appear specially is denied.

## I. FACTUAL BACKGROUND

According to what the United States intends to prove, on October 25, 1994 the cruise ship *Sovereign of the Seas* was observed by United States Coast Guard personnel discharging pollutants, later determined to be part of about 30 gallons of oil, into the territorial sea of the United States off the coast of San Juan, Puerto Rico. In port at San Juan, United States Coast Guard personnel conducted a pollution investigation in which oil samples were extracted from the *Sovereign of the Seas* engine room. These samples later provided a "fingerprint match" to samples removed from the site of the October 25, 1994 spill. During the course of the in port pollution investigation the United States Coast Guard interviewed crew members of the ship and examined the ship's Oil Record Book.

Defendant RCCL is a Miami-headquartered corporation although it is incorporated in Liberia. RCCL operates and controls a fleet of cruise ships, among them the *Sovereign of the Seas*. All of the ships in the RCCL fleet are owned by separate, wholly-owned subsidiaries of RCCL, the parent corporation. Miami, Florida is the home port of the *Sovereign of the Seas* which routinely stops at the ports of San Juan, Puerto Rico and St. Thomas, Virgin Islands. All ships in the RCCL fleet are subject to regular inspec-

tions by the United States Coast Guard. The *Sovereign of the Seas* flies the flag of Norway.

Defendant Henry Ericksen was Chief Engineer aboard the *Sovereign of the Seas* on October 25, 1994. As Chief Engineer he was responsible for the operations of the engine department. Defendant Svenn Rikard Roeymo served as First Engineer aboard the *Sovereign of the Seas* on October 25, 1994. As First Engineer he was responsible for overseeing daily engine room operations and for the immediate supervision of the engine room crew.

The indictment against the defendants consists of ten counts. (Docket No. I.) Count One charges defendants RCCL and Roeymo with conspiracy to discharge harmful quantities of oil into the navigable waters of the United States in violation of 33 U.S.C. § 1319(c) and § 1321(b)(3). Count One also charges defendants RCCL and Roeymo with conspiracy to use false writings in violation of 18 U.S.C. § 1001. Count Two charges defendant RCCL with knowingly discharging a harmful quantity of oil into the navigable waters of the United States in violation of 33 U.S.C. § 1319(c)(2)(A) and § 1321(b)(3). Count Three charges defendant RCCL with a failure to report harmful discharges to the appropriate United States agency in violation of 33 U.S.C. § 1321(b)(5). Count Four charges defendant RCCL with knowingly and wilfully using a false writing to make a false statement to the United States Coast Guard in the form of a falsified Oil Record Book representing that no discharges of contaminated bilge waste were made without the use of the Oil Water Separator in violation of 18 U.S.C. § 1001. Count Five charges defendants RCCL and Roeymo with knowingly and willfully making false statements to a United States Coast Guard official in violation of 18 U.S.C. § 1001, by claiming that waste oil found under the Oil Water Separator on the *Sovereign of the Seas* came from a blown seal on a fuel oil purifier, when the defendants knew this statement was false. Count Six charges defendants RCCL and Ericksen with knowingly and wilfully making false statements to a United States Coast Guard Official in violation of 18 U.S.C.

§ 1001, by stating that the Oil Water Separator on board the *Sovereign of the Seas* was working properly when the defendants knew in fact that it was not. Counts Seven and Eight charge defendants RCCL and Ericksen with witness tampering in violation of 18 U.S.C. § 1512(b)(3) and § 1512(b)(1). Count Nine charges defendants RCCL and Roeymo with witness tampering in violation of 18 U.S.C. § 1512(b)(1). Finally, Count Ten charges defendants RCCL and Roeymo with obstruction of justice in violation of 18 U.S.C. § 1512(b)(2)(B).

## II. DEFENDANT RCCL'S MOTION TO DISMISS COUNTS ONE THROUGH SIX FOR LACK OF JURISDICTION

█ RCCL contends that jurisdiction over the charges properly rests with Norway and not the United States pursuant to the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships (hereinafter MARPOL) and the United Nations Law of the Sea Convention of 1982 (hereinafter UNCLOS). RCCL maintains, and the court agrees, that counts one through six, for purposes of determining jurisdiction, rely on a single discharge of oil from the *Sovereign of the Seas* cruise ship on October 25, 1994. RCCL further maintains, and the court agrees, that under applicable treaties and binding customary international law, the United States is limited to the imposition of monetary penalties for violations of its pollution control laws involving non-serious discharges of pollutants within the territorial sea of the United States. RCCL maintains that, as the United States, through the Coast Guard, has imposed a $4,000 administrative penalty for the October 25 incident, which was promptly paid by RCCL, the imposition of further penalties contravenes international law. This final contention is not persuasive.

The Water Pollution Prevention and Control Act, 33 U.S.C. § 1251 *et. seq.*, provides for the imposition of criminal penalties in the form of a fine not to exceed $10,000 or by imprisonment for not more than six months, for keeping false records of a ship's pollution activity or for tampering with a ship's oil water separator. 33 U.S.C. § 1319(c)(2).

The Water Pollution and Control Act further provides a penalty not to exceed an additional $10,000 or imprisonment of not more than a year for failure to notify the appropriate government agency of any spills or discharges of oil within the navigable waters of the United States. 33 U.S.C. § 1321(b)(5). The charge of conspiracy carries with it a fine and/or five years imprisonment. 18 U.S.C. § 371. Fraud has a maximum fine of $10,000 and/or five years imprisonment. 18 U.S.C. § 1001. The tampering charge carries a fine and/or ten years imprisonment. 18 U.S.C. § 1512(b).

Matters of pollution by foreign vessels within the territorial sea of the United States are governed by UNCLOS. Although the treaty arising from the convention is currently pending ratification before the Senate, it nevertheless carries the weight of law from the date of its submission by the President to the Senate. *See* Article 19 of the Vienna Convention on the Law of Treaties. The submission of the treaty to the Senate expresses to the international community the United States' ultimate intention to be bound by the pact. Pending a treaty's rejection or ratification by the Senate under Article 18 of the Vienna Convention, the United States is bound to uphold the purpose and principles of the agreement to which the executive branch has tentatively made the United States a party.

Section Seven of Part XII of UNCLOS provides that:

> Monetary penalties only may be imposed with respect to violations of national laws and regulations or applicable international rules and standards for the prevention, reduction and control of pollution of the marine environment, committed by foreign vessels on the territorial sea, except in the case of a willfull and serious act of pollution in the territorial sea.

Law of the Sea Convention, Article 230.2.

The October 25, 1994 dumping occurred less than twelve miles off the shore of Puerto Rico and therefore within the territorial sea of the United States. *See* Presidential Proclamation No. 5928, 54 Fed.Reg. 777 (1988) (mandating a twelve mile reach of territorial sea around the United States pursuant to

international law, to wit, UNCLOS). The *Sovereign of the Seas* is a foreign vessel. Although the dumping of that date is alleged to have been performed willfully, no immediate threat to the environment was posed by the 30–gallon spill. Therefore no serious act of pollution occurred. Accordingly, the defendants may only be subjected to monetary penalties within the jurisdiction of the United States pursuant to Article 230.2.

This limitation, however, in no way bars the United States from pursuing the charges against the defendants. Although the government may be estopped from seeking nonmonetary penalties, such as imprisonment, the pursuit of monetary penalties in no way contravenes international law.

■ RCCL further contends that the law of the flag mandates Norwegian jurisdiction of this matter. The law of the flag is customary international law recognized within the courts of the United States and the world. The defendants summarize the law of the flag by quoting from the United States Supreme Court opinion in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953):

> Perhaps the most venerable and universal rule of maritime law ... is that which gives cardinal importance to the law of the flag. . . .
>
> This Court has said that the law of the flag supersedes the territorial principle, even for purposes of criminal jurisdiction of personnel of a merchant ship, because ... [the ship] "is deemed to be a part of the territory of the sovereignty [whose flag it flies], and not to lose that character when in navigable waters within the territorial limits of another sovereignty."

*Lauritzen v. Larsen,* 345 U.S. at 584–85, 73 S.Ct. 921 (quoting *United States v. Flores,* 289 U.S. 137, 155–59, 53 S.Ct. 580, 77 L.Ed. 1086 (1933)).

Even by the defendant's own account, the law of the flag applies only to jurisdiction over the aboard activities of ships and their personnel. The pollution here being prosecuted allegedly occurred outside the ship and therefore outside the jurisdiction of Norway under the law of the flag. Had an on-board

oil spill ignited an on-board fire, the proper forum for the suits that may arise from such a catastrophe would have been Norway. However, that is not the case here. As the pollution occurred within the territorial boundaries of the United States and outside the protection of the law of the flag, jurisdiction of this matter properly lies with the United States, under a law of the flag theory.

■ RCCL further contends that treaties to which the United States is a party limit the United States' jurisdiction over non-serious marine pollution committed within the territorial seas of the United States. The defendant contends that MARPOL requires the United States to report any violation of the treaty by a foreign ship plying United States waters to the ship's flag state and that upon receipt of this report, Article 6.4 requires the flag state to take appropriate action. However, MARPOL provides for the exercise of limited jurisdiction by port and coastal states over treaty violations within territorial waters, pursuant to UNCLOS. *See* MARPOL, Article 9.3.

The defendants contend that UNCLOS requires that the United States surrender jurisdiction of this matter to Norway. The court disagrees. A careful review of the MARPOL and UNCLOS treaties reveals concurrent jurisdiction of this matter between the United States and Norway. The defendants' arguments regarding the wisdom of the United States Attorneys in choosing to prosecute this case within the United States necessarily fall on deaf ears. It is not the role of the judiciary to decide what foreign policy tacks the executive should take.

For the foregoing reasons the defendants' motion for dismissal of Counts One through Six of the indictment for lack of jurisdiction is denied.

### III. DEFENDANT RCCL'S MOTION TO DISMISS COUNT TWO FOR VIOLATING THE DOUBLE JEOPARDY CLAUSE

■ The Double Jeopardy Clause of the Fifth Amendment states that no person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb."

U.S. Const. amend. V. The defendant RCCL argues that when the United States Coast Guard levied a $4,000 fine against RCCL it triggered the Double Jeopardy Clause thereby barring future prosecution of RCCL for the events of October 25, 1994. This double jeopardy claim relies on the expectation of multiple punishments instead of the fear of multiple prosecutions. *See United States v. Stoller,* 78 F.3d 710, 715 (1st Cir.1996). Generally, either criminal prosecutions or civil proceedings (as occurred here previously) instituted by the same sovereign may result in punishment sufficient to implicate the Double Jeopardy Clause. *United States v. Stoller,* 78 F.3d at 715; *see United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 2142–47, 135 L.Ed.2d 549 (1996); *United States v. Halper,* 490 U.S. 435, 443, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). In order to trigger the Double Jeopardy Clause, the fine previously imposed must have served a punitive function. The court is required to consider the jeopardy argument using the framework established by *United States v. Stoller,* which includes the totality of the circumstances, the source of the authority of the fine, the goals underpinning the authorizing statute, the order imposing the fine, the purpose it serves, and the circumstances attendant to its promulgation. *United States v. Stoller,* 78 F.3d at 721; *see United States v. Emerson,* 107 F.3d 77, 82 (1st Cir.1997). A review of the record indicates that the fine levied by the Coast Guard did not rise to the level of "punishment." The court finds RCCL's argument that the imposition of a $4,000 fine against RCCL when the cost of investigating the oil spill and its source was $3,880 to be without merit. The amount levied amounts to the cost of the laboratory testing and sampling. Penalties such as the one levied here are deposited in the Oil Spill Liability Trust Fund. *See* 26 U.S.C. § 9509. Fines of this nature fall within a scheme that comprehends payment of removal costs and combating the threat of oil pollution. *See* 26 U.S.C. § 9509(c)(1)(A). The administrative penalty here is determined by considering the cost involved in the oil spill identification analysis. Indeed, the calculation is practically mathematical. Twelve samples were taken and forty analyses were performed at a cost per analysis of $97. The administrative fine scheme as applied is completely remedial, not punitive.

Having found that the $4,000 fine does not rise to the level of punishment, and therefore does not trigger the Double Jeopardy Clause, the court finds that RCCL's motion for dismissal pursuant to the Double Jeopardy Clause of the Fifth Amendment should be and is hereby denied.

## IV. DEFENDANT RCCL'S MOTION TO DISMISS COUNT THREE FOR FAILURE TO ALLEGE AN OFFENSE

■ "Any person in charge of a vessel ... as soon as he has knowledge of any discharge of oil ... [must] immediately notify the appropriate agency of the United States government of such discharge." 33 U.S.C. § 1321(b)(5). RCCL seeks the dismissal of count three for a failure to state with specificity the person in charge of the *Sovereign of the Seas* on October 15, 1994. RCCL argues that the liability for failure to report rests only with a single individual in charge of the vessel and that the indictment must name that individual. RCCL contends that section 1321(b)(5) does not provide for corporate liability under the doctrine of *respondeat superior.* In support of this theory RCCL cites no cases. Faced with the dearth of case law, but with clear statutory language, the court finds that the indictment adequately names a person, the RCCL corporation, as having been in charge of the ship on October 25, 1994. *See* 33 U.S.C. § 1321(7) (person includes firm, corporation).

Therefore RCCL's claim that count three of the indictment failed to allege a person in charge of the *Sovereign of the Seas* lacks merit and RCCL's motion to dismiss Count Three of the indictment on this ground is denied.

## V. DEFENDANT RCCL'S MOTION TO DISMISS COUNTS FOUR THROUGH SIX FOR FAILURE TO STATE AN OFFENSE

■ RCCL moves the court to dismiss counts four through six of the indictment for

failure to state an offense. RCCL contends that the United States failed to allege that the false statements made by RCCL were materially false, materiality being an essential element of the offense.

■ The elements of the crime of making a false statement under 18 U.S.C. § 1001 are (1) that the defendant knowingly made a material false statement; (2) that such statement was made knowingly and willfully; and (3) that the statement was made in a matter within the jurisdiction of a federal agency. *See, e.g., United States v. Notarantonio,* 758 F.2d 777, 785 (1st Cir.1985); *cf. United States v. Corsino,* 812 F.2d 26, 29 (1st Cir. 1987). The defense stresses that the Supreme Court recently emphasized the indispensable nature of the materiality element in an 18 U.S.C. § 1001 violation. However, the holding of *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), was that the issue of materiality is for the jury. *Cf. United States v. Delano Lopez,* 71 F.3d 954, 959 (1st Cir.1995). According to the concurring opinion, the majority did not put an end to conflicting law between the First and Second Circuits as to materiality being an element of 18 U.S.C. § 1001. *See United States v. Gaudin,* 115 S.Ct. at 2320 (Rehnquist, C.J., concurring). While materiality is an element of the offense, *see United States v. Gaudin,* 115 S.Ct. at 2313; *see also Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997) (materiality is element of perjury under 18 U.S.C. § 1623); *cf. United States v. Wells,* 519 U.S. 482, 117 S.Ct. 921, 924, 137 L.Ed.2d 107 (1997) (materiality not element of false statement under 18 U.S.C. § 1014), it is sufficient under Rule 7(c)(1), Federal Rules of Criminal Procedure, for the charge to contain a definite written statement of the essential facts constituting the offense. *See Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Yefsky,* 994 F.2d 885, 893 (1st Cir.1993); *see also United States v. Serino,* 835 F.2d 924, 929 (1st Cir.1987). The facts of such materiality should therefore be described in the indictment. *See Hamling v. United States,* 418 U.S. at 118, 94 S.Ct. 2887; *United States v. Arcadipane,* 41 F.3d 1, 7 (1st Cir.1994). The materiality of the respective false statement is apparent from the very wording of each of counts four through six. *See United States v. Wells,* 766 F.2d 12, 22 (1st Cir.1985); *cf. United States v. Winter,* 663 F.2d 1120, 1138 (1st Cir.1981). The omission of talismanic language does not render counts four, five and six fatally defective. Therefore the motion to dismiss Counts Four through Six for failure to state an offense is denied.

## VI. DEFENDANT RCCL'S MOTION TO DISMISS COUNTS FIVE AND SIX BASED UPON THE "EXCULPATORY NO" DOCTRINE

■ RCCL contends that within the First Circuit, despite the apparently broad language of 18 U.S.C. § 1001, a false remark may be excepted from coverage of section 1001 if that remark is an exculpatory response to an investigative inquiry. The basic premise of the "exculpatory no" doctrine is that an individual may not be prosecuted for making fraudulent statements in response to government inquiries which, if answered truthfully, would expose the individual to criminal liability. *United States v. Chevoor,* 526 F.2d 178, 183 (1st Cir.1975); *cf. United States v. Pandozzi,* 878 F.2d 1526, 1533 (1st Cir.1989); *United States. v. Poutre,* 646 F.2d 685, 688 (1st Cir.1980). RCCL contends that the exculpatory no doctrine provides a shield against section 1001 liability in the present case because had the defendants answered the Coast Guard's inquiries truthfully they would have incriminated themselves. However, such is not the case. Title 33 U.S.C. § 1321(b)(5) under which the defendants are now being prosecuted provides in its last sentence:

> Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement.

Accordingly, had the defendants answered the Coast Guard's inquiries truthfully, they would not have been exposed to the now corresponding criminal liability. On the contrary, truthful responses would have provided them with the shield that they now seek

from the "exculpatory no" doctrine. The statements attributed to the defendants, however, go beyond the coverage of the terse "exculpatory no" doctrine since each statement is more than a summary denial or a simple no. The court declines the invitation to follow or adopt case law from other circuits on this controversial issue.

For the foregoing reason RCCL's motion to dismiss based on the "exculpatory no" doctrine is denied.

## VII. DEFENDANT RCCL'S MOTION TO DISMISS COUNT TEN FOR FAILURE TO ALLEGE AN OFFENSE

 RCCL contends that count ten of the indictment fails to apprise RCCL of the proceeding which they allegedly obstructed. However, the indictment reads, in pertinent part, as follows:

the defendants directed RCCL employees to remove, destroy and dispose of a pipe, which had been used to bypass the Oil Water Separator aboard the *Sovereign of the Seas,* after U.S. Coast Guard pollution investigators had left the *Sovereign of the Seas* on October 25, 1994, in San Juan, Puerto Rico, and before the U.S. Coast Guard was scheduled to reboard the *Sovereign of the Seas* on October 29, 1994 in Miami, Florida.

Docket No. 1, Count 10 of the Indictment at 25.

 The government must notify the defendants of the specific proceeding which was obstructed. A proceeding, for purposes of 18 U.S.C. § 1512(b)(2)(B) prosecution, may be any of various judicial or administrative proceedings, including proceedings before a Federal government agency. *See* 18 U.S.C. § 1515(a)(1). The language of the indictment makes clear that the defendants are being charged with having obstructed an ongoing investigation being conducted by the United States Coast Guard—a federal agency. It is apparent that the defendants are being charged with obstructing the Coast Guard's investigation. Following the reasoning of Rule 7(c)(1), the information required of an indictment should be sufficient so that an accused may prepare a defense. The tracking of the statutory language is generally

sufficient to adequately inform an accused of the charges he faces. *Hamling v. United States,* 418 U.S. at 117, 94 S.Ct. 2887; *see United States v. Wells,* 766 F.2d at 22. The defendant has been adequately informed of the charge against him. The motion to dismiss Count Ten is denied.

## VIII. DEFENDANT RCCL'S MOTION TO COMPEL ELECTION BETWEEN COUNTS EIGHT AND NINE

 RCCL requests the court to compel election between prosecution of counts eight and nine, contending that the counts are multiplicitous. Generally speaking, an indictment is multiplicitous if it charges a single offense in more than one count. *See United States v. Brandon,* 17 F.3d 409, 422 (1st Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 80, 130 L.Ed.2d 34 (1994). Both counts charge RCCL with violating 18 U.S.C. § 1512(b)(1), in November of 1994

[with directing] a Second Engineer aboard the *Sovereign of the Seas* to give a false explanation regarding the waste oil found in the overboard discharge pipe by a U.S. Coast Guard official conducting a pollution investigation on October 25, 1994, and to withhold information regarding equipment and procedures used to bypass the Oil Water Separator.

Docket No. 1, Counts Eight and Nine of the Indictment at 23–24.

RCCL maintains that both counts allege the same act, to the same person, at the same place, and on the same date. The government, however, counters that two separate and distinct acts were committed by RCCL in November 1994: one through its employee Ericksen (Count Eight) and another, on a different date in November, through its employee Roeymo (Count Nine).

As the court finds that two separate acts are being charged, election between the two counts is not required and RCCL's motion to compel election is denied.

## IX. FOURTH AMENDMENT

 The Fourth Amendment guarantees "[t]he right of the people to be secure in

their persons, houses, papers, and effects, against unreasonable searches and seizures." An individual's Fourth Amendment right to be free from unreasonable searches is implicated when he or she (1) has "manifested a subjective expectation of privacy" in the place searched, which (2) "society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *United States v. Cardona–Sandoval*, 6 F.3d 15, 20 (1st Cir.1993). With this framework in mind, it has been sufficiently established that individuals have a diminished expectation of privacy on a vessel as opposed to that which can be claimed in their homes. *Id.* at 21; *see, e.g., United States v. Green*, 671 F.2d 46, 53 (1st Cir.), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2962, 73 L.Ed.2d 1352 (1982); *United States v. Hilton*, 619 F.2d 127, 131 (1st Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113, *reh'g denied*, 449 U.S. 1026, 101 S.Ct. 594, 66 L.Ed.2d 487 (1980). A statutory manifestation of this decreased expectancy of privacy and consequent exception to the Fourth Amendment's warrant requirement is 14 U.S.C. § 89(a) which reads as follows:

(a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so

as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

18 U.S.C. § 89.

 The United States Coast Guard's exercise of its duties to carry out a vessel's inspection in a safe and proper manner is considered to be a "limited intrusion" that is "reasonable" under the Fourth Amendment. *United States v. Villamonte–Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983); *United States v. Pringle*, 751 F.2d 419, 424 (1st Cir.1984); *United States v. Arra*, 630 F.2d 836, 841–42 (1st Cir.1980); *United States v. Hilton*, 619 F.2d at 131. Furthermore, it is difficult to take serious issue with the proposition that, generally, administrative safety and document inspections are permissible even "without particularized suspicion of wrongdoing." *United States v. Cardona–Sandoval*, 6 F.3d at 23; *United States v. Elkins*, 774 F.2d 530, 533–34 (1st Cir.1985); *United States v. Burke*, 716 F.2d 935, 937 (1st Cir.1983). While the inspections conducted by the United States Coast Guard are administrative in nature, they are not covered by the general administrative search exception to the Fourth Amendment warrant requirement. *See Michigan v. Clifford*, 464 U.S. 287, 291–92, 104 S.Ct. 641, 78 L.Ed.2d 477, *reh'g denied*, 465 U.S. 1084, 104 S.Ct. 1457, 79 L.Ed.2d 773 (1984); *Michigan v. Tyler*, 436 U.S. 499, 511–12, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). Rather, these Coast Guard searches are covered under the rubric of searches on the high seas or in United States territorial waters and fall under the regulatory rubric directed to safety inspections and ships. That criminal activity might be suspected or discovered is immaterial to the issue of the reasonableness *vel non* of the search. *See United States v. Villamonte–Marquez*, 462 U.S. at 584 n. 3, 103 S.Ct. 2573.

The facts as to which there appears to be no serious dispute follow:

A United States Coast Guard airplane sighted an oil slick behind the *Sovereign of the Seas* on the ship's approach to San Juan harbor. Discharge from the vessel was apparent from closer aerial inspection. Coast Guard personnel boarded the Sovereign on the morning of October 25, 1994. The boarding team interviewed the Captain and Chief Engineer and took samples in the engine room. The boarding/search lasted about three hours. Clearance for the vessel was withheld later that day and RCCL posted a $500,000 surety so that the ship would be allowed to leave. A second boarding in late afternoon included inspection of logs and possible oil discharge points as well as the oil water separator, a device designed to separate oil from oil-water mixtures. The search, which included interviews with crew members, lasted several hours. After the search team left, it returned from one to three hours later to continue the investigation, or conduct an independent investigation or search. RCCL was represented at that time by the presence of Francisco Bruno, Esq., a recognized admiralty attorney. The boarding team inspected the vessel, documents, logs and interviewed crew members. After this search was over, the vessel was not boarded again until October 29, 1994 in Miami, Florida, when an investigation was conducted by a marine inspector sent by the Coast Guard and an agent of the Coast Guard Investigative Service, a branch which conducts criminal investigations. During their investigation, several crew members were served with grand jury subpoenas. The final boarding was November 1, 1994. This time, the boarding team included a trial attorney from the United States Department of Justice. More subpoenas were issued. None of the searches/boardings above mentioned were rudimentary but rather were focused on seeking information/evidence in relation to possible or probable oil pollution, past or prospective, on the part of the *Sovereign of the Seas*. The above nutshell of the facts outlined by RCCL and the United States, including the extremely detailed versions of both parties, as reflected in their motion, opposition and reply, reflect that not only were the searches conducted by the United States Coast Guard objectively reasonable statutorily and practically, they were minimally intrusive at most, and therefore not amenable to triggering the warrant requirement of the Fourth Amendment.

The issue of consent has been raised by RCCL and addressed by both parties. While the existence of consented searches might put an end to the Fourth Amendment issue, the court declines to address this issue since the proffered facts and law do not favor a finding that the searches conducted by the Coast Guard and its agents were somehow an affront to the Fourth Amendment.

The motion seeking vindication of rights, including the suppression of all evidence obtained, all testimony related to the searches, and all evidence derived from the searches, is denied.

SO ORDERED.